No. 8901.

## SUCCESSION OF DR. PIERRE C. BOYER.

## Opposition of Edith Boyer to account of Administratrix.

The wife has no proprietary interest in the property and effects of the community until its dissolution. Tourné vs. Creditors, 6 La. 459; Tourné vs. Tourné, 9 La. 452; Guice vs. Lawrence, 2 A. 226.

The husband is head and master of the community; and he may dispose of its revenues and movable effects gratuitously, without the consent or permission of the wife, and without accountability to her or her heirs. It is only where the wife can prove, satisfactorily, that the husband has disposed of the community property by fraud, to injure her, that she can proceed against the heirs of the husband for one-half. R. C. C. Art. 2404.

Repairs made, during the existence of the community, to the separate property of the husband, used and enjoyed by the spouses, are at the expense of the community; and the revenues of the separate property of the husband belong to the community, which cannot, therefore, be charged with the rents of such property.

The recompense due for improvements to the separate property of the spouses, cannot exceed the enhanced value of the property, at the date of the dissolution of the community, resulting from such improvements. R. C. C. 2408.

Money belonging to the child of the father by former marriage, received by him as tutor during the second marriage, is a debt of the second community; and it bears interest from the date at which it was so received and such community is liable for both the principal and interest of the debt.

The widow in community has no claim for money expended by the deceased husband in the maintenance of his heir, child of a former marriage, either during the minority or majority of such heir, in the absence of all evidence of any intention on the part of the husband whilst living, of making such charge and the community is entirely solvent and possessed ample revenues during its existence.

The community of acquets and gains is not strictly a partnership: it is the effect of a contract; and it is governed by special law. R. C. C. Article 2807.

The widow in community, administratrix of the succession of the deceased husband, is entitled to commissions on the entire community property inventoried as part of the successions of her husband.

A PPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

---

*R. H. Marr* for Opponent and Appellee.

*E. W. Huntington* and *H. L. Dufour* for the Administratrix, Appellant.

---

The opinion of the Court was delivered by

TODD, J. Dr. Pierre C. Boyer died in the city of New Orleans, in 1881, intestate.

He was twice married. His first wife was Theodora Wedderstrandt, who died in 1861, leaving as sole issue of the marriage, Edith Boyer, then a minor of six years of age.

His second marriage was contracted in June, 1867, with Mrs. Pauline Tourné Boyer, who survived him. There was no issue of this second marriage. Mrs. Boyer, the surviving widow, was, after the death of Dr. Boyer, appointed administratrix of his succession and in due time rendered an account of her administration, which was opposed by Miss Edith Boyer, the sole child and heir of the deceased; and it is this opposition that is before us for review.

It was in part sustained by the judgment of the lower court and from that judgment the administratrix has appealed.

For a proper understanding of the controversy, it is necessary to state that Edith Boyer inherited from her mother a mortgage claim, on which her father collected $10,335 55, $3200 of which he received before his second marriage, and the residue, $7135 55, after the marriage.

Dr. Boyer was confirmed as natural tutor of his daughter several years after the death of her mother, but never caused an inventory of her estate to be made, and died without filing any account of his tutorship.

A short time before his second marriage, he purchased a residence in this city, situated on Terpsichore street, for $8000 –$6000 of which he paid in cash and gave his two notes for the balance of the price, for $1000 each, maturing respectively in one and two years, from the date of the sale, and which notes were paid after his second marriage.

He also had extensive repairs made on this property before his second marriage and paid for them after that event.

He continued to occupy this residence after his second marriage and up to the period of his death; made considerable repairs and improvements thereto, from time to time.

Edith Boyer, with the exception of two years spent with an aunt in New York, and a few months in Galveston, lived with her father in the family dwelling from the death of her mother to his death, in 1881.

These facts will suffice to suggest that the controversy in this case has grown out of the claims of the community, resulting from Dr. Boyer's second marriage, against his separate estate or against Edith Boyer, the sole heir thereto, and will give an idea of their character. As presented in the account of the administratrix, they consist mainly of charges against the separate estate for alleged debts of the same, settled by the community—being for sums paid on the price of the family dwelling, and for repairs and improvements thereon; and also, charges for the board, maintenance and education of Edith Boyer, before and after her majority.

These claims we will proceed to particularize and consider in their order.

I.

The notes representing the credit portion of the price for the Terpsichore street property mentioned, matured and were paid, as stated, after the second marriage. They amounted, in principal and interest, to $2240. As they were paid during the existence of the community, the presumption arises that they were paid out of community funds. The counsel for the opponent contends that this presumption is rebutted and the payments—at least as to the first note maturing—must have been made out of Dr. Boyer's separate funds. The evidence on which he relies does not satisfy us that such was the case. Besides, the presumption that the debts were settled with or out of the community funds is directly supported by the testimony of Mrs. Boyer; and, on the whole, after a careful review of the entire evidence on this point, we find no reason to disturb the finding of the judge *a quo*, who maintained this as a proper charge of the community against the separate estate.

II.

The debt for repairs on the house, contracted by Dr. Boyer before his second marriage, amounted in the aggregate to $2364 90. This amount was settled by different payments, extending over more than two years, and all made after the second marriage. Inasmuch as two of these payments, amounting to $500, were made within ninety days after the marriage, and considering that Dr. Boyer's earnings must have been considerable in the interval between the cash payment on his house, in February, and his marriage, in June, for it is shown that

in all these years his practice as a physician was large and lucrative, it is but reasonable to conclude that these two first payments, at least, were made out of his separate funds, and that the presumption to the contrary, arising from the time of the payments, is fairly refuted. The district judge thus held and deducted the $500 from the total of the claim on this account, and allowed the balance of $1864 90 as a proper charge in favor of the community, and we think it was correct.

### III.

The next charge is for improvements made upon the dwelling after and during the marriage. Their cost is stated in the account to amount to $3149. The separate estate cannot be charged with the cost of the improvements, but only with the amount that such improvements enhanced the value of the property. C. C. 2408; 2 A. 43; 14 A. 763; 33 A. 540; Suc. Roth.

We have examined the items of the account for these alleged improvements and are satisfied that some of the work charged for was not strictly for additions or permanent improvements to the property but for repairs. There was considerable testimony taken on this point, which we have attentively considered and we are not prepared to say that the conclusion of the district judge who estimated the enhancement in value to the property from the improvements at $2000, was incorrect. We shall not change his estimate or disturb the judgment in this respect.

### IV.

There is a charge in favor of the community and against the separate estate of Dr. Boyer, or Edith, his heir, amounting to $15,042 33— $9554 55 of which is for board, maintenance and education of Edith, during her minority, or that period of it dating from the second marriage, and the residue, $5487 78, for her board and maintenance after her majority and up to the death of her father.

This sum of $15,042 33 is credited with $1560 and $1350, making together $2910, as interest on the separate funds of Edith, in the hands of her father—leaving a balance in favor of the community of $12,132 33.

The whole of this is opposed and the question of correctness *vel non* or any portion of it is the most serious one presented by this controversy.

As before stated, Dr. Boyer never rendered any account of his tutorship, and we have no evidence before us as such an account would

have afforded, to show whether it was his intention to charge his minor child for these expenses or not. Edith was his only child, and the evidence portrays Dr. Boyer as a kind and affectionate parent and generous in his expenditures for the happiness and comfort of his daughter. It is also shown that he derived a large revenue from his practice as a physician, amounting, some years, to as much as $10,000.

During Dr. Boyer's lifetime, both before and after her majority, with the exception of two years spent with her aunt in New York, where she was sent for her health, Edith lived in her father's house. His family consisted only of himself, wife and daughter, with the addition, a part of the time, of a widowed sister.

He received, before his second marriage, funds of his daughter, inherited from her mother, amounting to $3200, which he never accounted for and which form no part of the controversy, in the present suit, and after his second marriage he received, at different times, sums belonging to her, derived from the same source, aggregating the further sum of $7135 74.

Of course, whatever may have been Dr. Boyer's wishes or intention in regard to charging his daughter for the expenses of maintenance, etc., during her minority, he could not, except with the advice of a family meeting, approved by the judge, have applied or used the funds of his child, beyond the interest thereon, for such purpose. C. C. 350. But the question arises, and it is the real one to be here determined, whether, under the circumstances stated and in the absence of any charge made against his daughter by Dr. Boyer, in his lifetime, such charge against his separate estate or against his daughter, as his heir, can be successfully urged after his death in behalf of the community for expenses incurred during her minority or even after her majority, to the extent of or as relates to either her capital or interest.

This is the claim now urged by Mrs. Boyer, the surviving partner of the community.

A recurrence to first principles governing the relations of parent to child, and to our laws, and to other systems from which our laws are derived, regulating parental duties and responsibilities, as likewise a brief reference to the elementary and leading principles applicable to the marital community, will aid us in the determination of this interesting question.

Every system of laws of which we have any knowledge, whether crude or enlightened, has recognized and consecrated that ruling principle of nature's great law, that prompts a man to love his offspring and

to labor for and contribute, even gratuitously, to his well being and happiness. The declarations illustrative of this principle are clearly laid down in the texts of the Roman law.

Among them are: that what the father or the mother has expended, from parental affection, can never be reclaimed. Thus: "*Alimenta quidem, quae filiis tuis præstitisti, tibi reddi non justa ratione postulas.*" Cod. 11, tit. 1, 9, 1, 15.

And even what has been expended for the maintenance and education of step-daughters cannot be recovered.

"*Si paterno affectu priviquas tuas aluisti seu mercedes pro his aliquas magistris expendisti ejus erogationis tibi nulla repetitio est.*" Ib.

And what the son may have received from his father, even after his emancipation, to enable him to pursue his studies abroad, unless intended as an advance, is not subject to collation. Digest X, tit. 111, 1, 50.

Article 1244 of our Code, while not going to the same extent, contains a similar provision to the last cited. This article is the same as article 852 of the Code Napoleon, being a literal translation. And commenting on this article (852), Demolombe says: "Ce qu'il faut alors seulement rechercher, suivant nous, e'est l'intention d'après laquelle ces frais ont été faits, soit pour son enfant, soit pour tout autre de ses successibles." Successions, 4, p. 484.

Under our law the husband is head and master of the community. During its existence he may dispose of its effects as he pleases, subject only to the right of the surviving wife, upon its dissolution, to proceed against his heirs for one-half of the same, provided that she can prove that the transfer or other disposition was made with the fraudulent intent to injure her. C. C. 2404.

In fact the wife has, during the marriage, no vested proprietary interest in any property composing the community, but only an inchoate right, which entitles her to the hope or expectation that if she survives her husband, she can receive or own one-half of the property that may be left after payment of the community debts. When this contingency arises, the surviving wife must take the community, if she accepts it all, as she finds it, without any right or power to call the succession of her husband or his heirs to an account for any act done or even waste committed during its existence unless in the exceptional case mentioned above, by which its value is diminished or its property is despoiled or encumbered. 6 L. 459; 9 L. 452; 2 A. 226.

As an illustration in the instant case: It appears from the evidence that for several years after his second marriage, Dr. Boyer supported out of his income in the same style that he maintained his daughter and with the same generosity, his widowed sister, yet we find no charge against his separate estate made by his surviving widow for expenditure of the community funds on this account. Nor could she legally make such charge. Or, to illustrate further: If Dr. Boyer had chosen to adopt some orphan child and rear and educate it at the expense of the community, he would not thereby subject his succession or heir to any charge in favor of the community or its survivor. And to go still further: Had he chosen even to squander the community funds or property on unworthy objects or in the gratification of extravagant tastes or luxurious indulgences, neither his estate nor his heirs could have been called to an account for it by the community or its representatives.

If this is so, and under the principles governing the community to which we have referred it cannot be controverted, how can a charge be made in behalf of the community after its dissolution, when none was made during its existence, for expenditures by the husband and father for so commendable a purpose as the maintenance and support of an only daughter to whom, it was shown, he was attached by the strongest ties of parental affection; and what does it matter whether that daughter was a minor or had attained her majority when the expenditures were made?

Strange to say that although this question would almost seem to answer itself, and has frequently come incidentally before the courts of this State, it has not been authoritatively answered by any decisions heretofore rendered. It has, however, been the subject of elaborate discussion by the French commentators on the Code Napoleon, which does not differ from our own with respect to the principles governing the community and the rights of the surviving widow therein.

Troplong, commenting with reference to the recompense due to the second wife for the expenses of the husband's children by a previous marriage, says:

"Une femme épouse un homme qui a des enfants d'un premier lit, et qui habitent avec lui la maison conjugale: les enfants mangent à la table commune, sont logés, nourris, entretenus aux frais de la commu-

nauté: l'épouse, sera-t-elle fondée à dire que c'est là une dette qui ne doit retomber sur la communauté, qu'à charge de récompense? Non." Ce système ne serait ni HUMAIN, ni recevable comme le fait remarquer Coquille, avec d'autres jurisconsultes, on regarde comme dettes de la communauté la nourriture et l'entretien, DANS LA MAISON PATERNELLE, des enfants d'un autre lit, c'est une charge ordinaire et domestique que l'autre époux à acceptée en se mariant et à laquelle il a entendu se prêter par amitié et affection, et non avec intention d'être recompensé." Cont de Mar. 2, No. 735, p. 45.

There was some question among French authors whether this rule was applicable where children of a former marriage were sent from home, and educated at colleges or boarding schools, but the same writer, after reviewing the authorities and citing in support of his opinion several jurisconsults of note, announces his conclusion that such a circumstance did not affect the rule. Troplong, Cont. de Mar. 2, No. 758, p. 61.

These views meet our approval.

It is true that we are cited to the case of Mercier vs. Canonge, 12 R. 385, as adverse to them. The facts of that case were in several particulars essentially different from the instant one. It presented a contest between the creditors of an insolvent tutor and an insolvent community and the heirs thereto. If, however, any dictum found therein is opposed to the views herein expressed, it may to that extent be considered overruled.

The conclusion announced on this point, however, as will appear from the statement of the premises from which it is drawn, is predicated on the hypothesis that there is no evidence of any intention on the part of the father and tutor to make any charge against his child on account of her maintenance, etc., during either her minority or after she became of age, for we would not have it understood that the same conclusion would follow where the evidence satisfactorily established that the charge for such expenses of the child was made by the parent, or clearly intended to be made.

It is contended by Mrs. Boyer's counsel that there is such evidence in the record, and we are pointed to the fact shown, that after his second marriage, Mrs. Boyer kept under his (Dr. Boyer's) direction a book in which all the expenses of Edith, except with respect to her board, were noted or charged. This fact might seem strongly to support the counsel's contention, but when taken in connection with the further fact that at the same time and under the same direction, were

33

entered in the book accounts of all the expenses of Dr. Boyer himself, of Mrs. Boyer, and of Dr. Boyer's sister whilst she remained a member of the family, this fact loses its significance.   The book was evidently kept as a kind of memorandum book, with a view to be informed of the current expenses of the family and to show the annual balances with respect to receipts and expenditures.   It might as well be said that Dr. Boyer was looking forward to an account against himself, or against his wife, or his sister, as against his daughter.

Besides, there is another circumstance that completely refutes any such intention on his part. ⸱ It is shown that Dr. Boyer loaned at interest $6000 of the money belonging to his daughter, from time to. time during her minority and after her majority; that he spoke of it as his daughter's money, both to those to whom the loan was made and to his daughter; and such fact appeared on the book kept by Mrs. Boyer.   If Dr. Boyer had intended to charge Edith for her expenses, at rates at all corresponding to those made in Mrs. Boyer's account as administratrix, there would have been no money of Edith's to loan, for the entire amount would have been absorbed by the charges against her by the time, or before, she reached her majority.

The only evidence of any purpose on the part of Dr. Boyer to charge his daughter for expenditures made on her account, is afforded by the testimony of Miss Boyer herself, wherein she stated, to use her own expression, "that her father told her that of late years," meaning, evidently, after her majority, "that the interest on her money was being spent on her clothing."   This evidence will suffice to exclude the right of Miss Boyer to recover the interest on her money received by her father after her majority, which amounted, as the record shows, to $1350.

The logical result of the legal conclusions we announce above is, that Miss Boyer, with the exception of this interest account after her majority, is entitled to recover the entire funds belonging to her, both capital and interest, that came into the hands of her father after his second marriage.   The principal, as before stated, was $7135 55, and the interest is on the respective amounts that make up this sum from the different dates at which they were respectively received.

It is contended by Mrs. Boyer's counsel that $6000 was the total amount of the capital which Dr. Boyer received, but it is certain that there was paid to him $7135 55, after the charges of attorneys' fees for collecting same had been settled; and it is not sufficiently shown that the above sum was subject to be reduced by any further charges.

Where the father and natural tutor has never rendered any account of his tutorship showing any charge against his child, nor otherwise distinctly shown any intention to impose upon the child the expenses of her maintenance during her minority, and has received her money and used it, or loaned it and collected the interest thereon, and at the same time is in the enjoyment of a large revenue of his own, there is no principle of law that would create a distinction between the capital and interest of such funds, and make him liable to account for the one and not for the other.

The lower court, whilst maintaining Miss Boyer's opposition as relates to the principal both for the expenses during her minority and after her majority, declined to allow the interest thereon accrued during her minority, and in this respect the judgment must be amended.

## V.

Opposition was made to a part of the commissions of the administratrix, on the ground that, as Mrs. Boyer was the owner of one-half of the community property inventoried as belonging to Dr. Boyer's succession, she could not charge commissions on that portion of it. There is no force in this proposition and no law to sustain it. The matter must be determined by the condition of things existing when the succession is opened and the inventory made. The surviving wife's ownership of any part of the community property is contingent, or at least subject to her right of renunciation; and the whole is liable to be absorbed by the community debts, and she can only accept the community subject to the payment of the debts.

The entire community assets were, therefore, properly placed on the inventory of Dr. Boyer's succession, and to be administered as a part thereof, and the judge of the first instance did not err in rejecting the opposition in this respect.

There was a small credit claimed in the account of $30 15, for commissions paid for collecting some small debts due the succession. This was properly disallowed in the court below. There was no necessity shown for the employment of the collector and, besides, it was a charge that the commission allowed the administratrix was designed to cover.

## VI.

The administratrix, in her account, charged the community with $8400, for rent of the Terpsichore street residence during the time of the second marriage, subject to a credit of $4123 96 for taxes and insurance on the property.

As the revenues of the separate property of either spouse belongs to the community, and as the community is properly chargeable with the taxes, repairs and insurance on the separate property used by it, the debit and credit as to these items was, by the terms of the judgment, properly stricken from the account.

The account further places among the assets of the community the entire charge made therein for the maintenance of Miss Boyer, amounting, as shown, to $15,042 33, and credits this sum with $7886 03, the capital and interest of Miss Boyer, as stated therein. And inasmuch as the judge rejected this charge for expenses of maintenance, he therefore properly allowed the administratrix to withdraw the above credit against the same. In fact the account was formulated, and the whole contention of the counsel of the administratrix with respect to it made upon the theory that the settlement of the community of *acquets.* and *gains* is like that of a settlement of an ordinary partnership. This is a mistake. The community is not strictly a partnership, and its administration and partnership are governed by special laws. C. C. 2807. Whilst approving this ruling, we mention it more for the purpose of saying, with a view to prevent confusion, that this disposition of the matter is not to affect in any manner the opinion herein expressed and the decree we shall render touching the recovery by Miss Boyer of the interest on her capital during her minority.

This completes the review of all the matters presented by the appeal.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be amended by placing Miss Edith Boyer, the opponent, on the account of the administratrix of P. C. Boyer's succession as a creditor of the community, besides for the sum of $7135 55 allowed by the judgment, also for five per cent interest per annum on the amounts composing said sum, as follows, to-wit:

On $1650 30 from the 21st May, 1868;

On $1006 00 from the 15th July, 1868;

On $ 675 25 from the 10th July, 1869;

On $3258 00 from the 15th December, 1869;

On $ 546 00 from the 23rd February, 1870;

said interest to run from the several dates mentioned till the 14th of May; 1876 (the majority of Miss Boyer), and then cease. That the judgment in every other respect, as thus amended, be affirmed, with costs.