Statement of the Case.
NICHOLLS, C. J.
The plaintiffs alleged That they, with the exception of Otto Emile Sharp, were the only children and sole and only heirs and legatees of their deceased mother, Sirs. Anna Maria Stahl, by first marriage the divorced wife of Frank Sharp, and by second marriage the wife of the defendant Henry Zeller. That one of the petitioners, Frank Sharp, Jr., was the testamentary executor of his mother. That their mother was married to defendant on September 5, 1890, and from that moment a community of acquets and gains existed between them. That the community was dissolved by the death of their mother. That during the community the defendant acquired, and did not dispose of, certain real estate, which they described.
That on June 27, 1898, by act before ICronenberger, notary public, the defendant purported to sell to Rheinhardt Zeller certain described portions of . said property. That said sales to him were pure simulations; the object of the same being to get the same out of the name of the defendant, in order to destroy any eventual rights therein of the community between himself and their mother, between whom and himself there existed differences and disputes.
That there was no issue of the marriage between- their mother and defendant Zeller. That by the death of their mother, as her legal heirs and as legatees under her will, they became the owners, in stated proportions, of undivided interests in all said properties. That, in addition to said property, there belonged also to the community 10 shares of the capital stock of the Sixth District Building & Loan Association, and also other property, which they reserved the right *64 to thereafter claim and have partitioned. That they were entitled to be recognized as joint owners of said described property, and to demand a partition of the same. That such position could only be effected by Imitation.
That Emile Oito Sharp, referred to in their petition, was their brother. That he was a minor, but had been emancipated by a judgment which was then being sought to be set aside, and, under the circumstances, he should not only be cited individually, but through a special tutor, whom they asked should represent him. That Rheinhardt Zeller be made a party and cited, as well as Henry Zeller. They prayed for such appointment and for citation to' all such parties; that there be judgment recognizing petitioners and Otto Emile Sharp as the sole and only heirs at law and legatees of their mother, and as such the owners of her share in community; that they be recognized and decreed to be joint owners of the properties described in their petition, in the proportions stated; that the sales to Rheinhardt- Zeller be decreed simulated, and to have been and to her still property of the community; and that the property be partitioned among themselves, Henry Zeller, and Otto Emile Sharp by licitation, on terms recited and prayed for in the petition.
The court appointed Frank Sharp, Jr., as special tutor of Otto Emile Sharp, and directed that the latter be cited through him. Henry Zeller answered. After pleading the general issue, he admitted the marriage between himself and plaintiffs’ mother, but averred the date of the marriage to have been on the 5th of September, 1889, and not 1890. He admitted that, as a consequence of said marriage, there arose technically -a community between them; but he denied, as a matter of fact, the claim that there was any property acquired either by himself or his wife, except as he might thereafter admit, which by operation of law would fall into and constitute part of the community. He averred expressly that all of the real estate described in plaintiffs’ petition was acquired by himself, not only in his own name, but for his own use and benefit, and was paid for in each and every case with his own separate funds, which fact was specifically set forth in the acts of purchase of certain of the properties described, and the same was true, as a matter of fact, in respect to all of the properties.
He averred: That at the time of his marriage he owned considerable property, movable and immovable, and cash money, and all of the properties subsequently acquired by him, and as described in plaintiffs’ petition, were bought with his separate funds, and were in every case a reinvestment of proceeds of separate property by him previously owned and sold. That his wife also owned in her own right certain properties, and, as a matter of fact, it was distinctly understood that no community property should be acquired, and that each should retain their separate property, and, in case of sale, reinvest in his or her separate name.
That his business was that of buying and selling real estate on speculation, and he had made numerous transactions of that character during the period embraced between the date of his marriage, September 5, 1889, and the date of the death of his wife, all in his own name and for his own account, and he also bought and sold for his wife in the same manner; that is to say, he assisted her in doing so; the transactions being with heimoney and for her account. That if it should be held, as a matter of law, that the purchases so made became community property, then and in that event the total price paid therefor by him constituted and constitutes a claim against said community, payable as a debt to him, and in such event he would pray the court to so decree. That for similar reasons the property standing in the name of his wife, acquired during said marriage, should in that event be deemed and held to be community property, subject to a claim in a similar manner in favor of his wife or her succession for the purchase price invested therein. Without waiving anything as to his said claims, he averred that about the 5th of May his wife made affidavit before a notary public, claiming that he had in his possession a sum exceeding $5,000 of her separate paraphernal estate, and caused the same to be recorded in the office of the recorder of mortgages, for the purpose of affecting his property with a legal mortgage in her favor; that the facts stated in her affidavit were untrue, and that neither himself individually, nor the community, if any should be found to exist, nor any property *66 thereto belonging, is indebted to his deceased wife in any sum whatsoever; that prior to the decease of his wife he filed a suit for the purpose of having this inscription annulled, which was dismissed on an exception on the ground it was not competent for him — a husband — during the marriage to institute suit against his wife on the cause of action alleged.
He averred in that regard the facts to be that his deceased wife collected and received and retained and expended or controlled, after her own way, all and singular, the revenues both of his and of her property, and never accounted to him for them; that all of said revenues thus falling into the hands of his wife, or all that was left after payment of taxes, insurance, maintenance of the household, etc., remained under control and in possession of his wife, and he is unable to say what she did with the same, or how they were disposed of. For these reasons, he denied that he was indebted to her in the manner claimed by her. On the contrary, hé averred that on.or about the 8th of September, 1889, a few days after his marriage, he gave and intrusted to his wife, for safe-keeping, the sum of $2,000, $200 of which was in gold, and the balance in currency, which was his own personal property, owned and possessed at the time of the marriage; that he repeatedly demanded an accounting to him of that money, as well as the rents which she collected and controlled, but she persistently refused; 'stating, among other reasons, that she had expended it for necessary household affairs. He averred that she had never accounted to him for said money; that differences and quarrels arose constantly between him and her in this regard until she left the matrimonial domicile, several months before her death. He prayed that plaintiffs’ demand be rejected; that all the property be decreed to be his separate property, but that, in the event that any part of it be decreed to be community property, then that he do have judgment against the community for the purchase price thereof, shown to have been his own separate funds, to be adjusted in the final partition. Assuming the position of plaintiff in reconvention, he prayed for judgment decreeing that neither he, nor the community existing technically between himself and his deceased .wife, is indebted to the deceased in any sum whatsoever, and ordering and directing that the inscription of the affidavit referred to be ordered to be canceled and erased, and that he do have judgment against the plaintiffs jointly in the sum of $1,000, and general relief.
The plaintiffs, by supplemental petitions, added to and included several other properties to those referred to in the original petition. The court rendered judgment recognizing plaintiffs as heirs of their mother, rejecting their demand for nullity of the sale to Rheinhardt Zeller, decreeing that the property described at length in the judgment belonged to and formed part of the community existing between defendant and his deceased wife, and ordering the sale of the same to effect a partition; that defendant Henry Zeller account for the note of Rheinhardt Zeller given as the purchase price of the land sold to him, and all payments made thereon; and that Henry Zeller recover of the community the-sum of $3,900, amount of his separate claim against it, with legal interest from date of dissolution.
Henry Zeller appealed. The plaintiffs prayed that the judgment be reduced by the sunn of $1,000, the amount claimed by him to have' been given to his wife for safe-keeping a few days after their marriage, and be further reduced by the sum of $2,481, amount paid to-him after his marriage in settlement with' four of his children by a prior marriage, or that he be decreed the debtor of the community for said sum.
The defendant Henry Zeller, a widower with a number of children, married on the 5th of September, 1889, Anna Maria Stahl, the sister of his deceased wife. She was at the time of her marriage the widow of Frank Sharp, with a number of children, issue of that marriage. She died in October, 1898. There were no children by the second marriage. About three months before her death, in consequence of differences between herself and her husband, she left his house, and lived thereafter with one of her daughters.
Zeller and his second wife each owned certain real estate at the time of their marriage. The real estate then owned by him, or at least that part of which appears in this record, had belonged to the community which had existed between himself and his first wife, and it had been adjudicated to him under *68 article 343 of the Oivil Code. At the time of his second marriage it was affected by a special mortgage in favor of his children.
Prior to the second marriage the parties verbally agreed that after the marriage the spouses should administer separately their separate property; that no community property should be acquired. Shortly after the marriage, Zeller intrusted to his wife, for safe-keeping, $800 in treasury notes and $200 in gold.
Zeller’s business prior to his second marriage had been that of buying and selling real estate on speculation. He continued in the same business after his marriage with Mrs. Sharp, and during the marriage bought and sold at different times over 30 pieces of property. Among these were 3 of the pieces which had been adjudicated to him. as stated. The aggregate price of these 3 pieces of property was $2,900. The wife also bought and sold real estate. Up to the time she left her husband’s house she collected practically all of the rents not only of the properties which stood in her husband’s name, but also in her own. The rents of the former properties she expended, without the supervision or control of her husband, for the expenses of the family.
Por the first three or four years after his marriage, Zeller, having no bank account and no safe, turned over to his wife the proceeds of sales of real estate made by him, with instructions to keep the same separate and apart frdm the moneys arising from the rents of the properties. On several occasions during that time, as he needed funds with which-to make purchases of real estate, he would withdraw from the funds of his wife the amount called for by the purchases. At the end of three or four years he bought an iron safe, and from that time forward all moneys arising from sales of real estate were (in order to keep them separate and distinct from the other funds) deposited therein, and drawn from as occasion required to make new purchases. Mrs. Zeller continued, however, to collect and expend the rents of all the properties. The purchases made by the wife during the marriage were made in her own name, with the recital that the properties were bought for herself with her separate paraphernal funds. The husband signed these acts. There is no issue made in this case touching the titles to these properties. When the second wife died, a number of pieces of real estate which had been purchased by Zeller during the second marriage remained undisposed of; and the plaintiffs, as heirs of their mother, claim in this partition suit that they belong to the community of acquets and gains which they aver existed between her and Zeller. Their claim is denied by the husband, who contends that, though bought during the marriage, they are separate property, as they were bought for his separate account, with funds belonging to himself individually, from the sale of properties which he owned at thé time of his second marriage, and that under the law and the recitals of his acts of purchase, which were supported by the facts, these properties belonged to his separate estate.
It is not claimed by him that these properties were “acquired with moneys owned by him at the time of his second marriage, but with the proceeds of the sales, made during the community, of real estate which belonged to himself prior to the existence of the community, and as a reinvestment of his real estate by other real estate.”
There were only three sales of property of that character made during the marriage community, the price of the three amounting to $2,900.
Opinion.
In the brief of the counsel, of appellant, Zeller, it is stated that “unquestionably the general rule is that all property acquired during the marriage falls into the community. Oiv. Code, art. 2402. But this rule is subject to the exception that either spouse may acquire separate property by the investment of separate funds, with intention to acquire for separate account, and the right thus to acquire belongs to the husband as well as the wife.”
In support of their position that the husband is thus authorized by law, the court is referred to Tanner v. Robert, 5 Mart. (N. S.) 255; Broussard v. Broussard, 11 Rob. 446; Ellis v. Rush, 5 La. Ann. 116; Young v. Young, 5 La. Ann. 611; Bass v. Larche, 7 La. Ann. 104; Joffrion v. Bordelon, 14 La. Ann. 618; Breaux v. Carmouche, 15 La. Ann. 588; Durham v. Williams, 32 La. Ann. 162; and Moore v. Stancel, 36 La. Ann. 819.
*70 They say: “The authorities running from 1826 to 1884, without any dissent, justify us in assuming that, under the law as now settled, the husband may acquire property for his separate account by the investment of his separate funds, if a declaration to that effect be made in the act of purchase. His declaration, however, is not conclusive upon the heirs of the wife, and, as to them, must be sustained by proof. The defendant was so advised, and acted on the faith of this court’s interpretation of the law. The deeds to all the property in controversy contain the necessary recitals to render the property separate acquisitions of the husband, if the evidence submitted proves that they are true.”
For the purposes of this case, it may be conceded that a husband can. under a certain state of facts, exclude property from the operation of the general rule that property acquired during a marriage 'falls into the community of acquets and gains which arises from marriage contracted without a marriage contract, and cause the ownership of the same to vest in his separate estate; but the question is whether the given state of facts exists, or is shown to have existed, in this particular case. The position is taken here under peculiar circumstances. In the first place, Zeller’s work or business, both before and after his second marriage, consisted in buying and selling real estate on speculation, and the sales made by him on which his claims rest comprise the sales made in the course of his entire business. Granting that the first transaction made by Zeller after his second marriage may have been a sale of certain real estate properties belonging to his separate estate, and that this should have been followed by repeated and successive sales, and repeated and successive purchases, so judiciously made as to bring about uniformly successful results, it may admit of debate whether he could, by taking the precaution in each of the purchases so made to declare that the same was made on his separate and individual account, with funds arising out of prior sales ■of his separate property, cause the entire gains or profits resulting from the pursuit of his business to inure exclusively to his own benefit, and his wife to take nothing under and through the community. Such a result would be at variance with the theory upon which the system of the community is based.
Appellant’s position in this case is concisely stated in the application made in the district court for a new trial. It is there asserted that, by comparison and examination of the certificates of purchase and transfers on file, he will be able to show that the properties which he originally purchased bj the reinvestment of proceeds of properties sold by him, which he owned at the time of his second marriage, netted profits, out of which, together with the original amount invested, he purchased all of the properties in controversy herein, and that he did keep separate the funds and proceeds so received from any moneys for rents or otherwise which might be considered as falling into the community existing between him and his wife; that he distinctly and specifically reinvested in kind the proceeds of the properties sold by him; without confusing the same with any other funds or assets.
Counsel admit that the rents received from the different properties fell into the community, but they deny that any increase in the value of the properties when sold belongs to the community, when over and above those they had when bought, and claim that this increased value belongs to the husband, in right of his original and separate ownership.
This may be true in the case of a single piece of real estate purchased by way of an undoubted reinvestment of another piece which the husband had sold, where the increase would be due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade, and not to the result of the common labor, expenses, or industry. Article 2408 of the Civil Code declares that, “when the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse or his or her heirs shall be entitled to the reward of one-half of the value of the increase or amelioration if it be proved that the increase or amelioration be the result of the common labor, expenses or industry, but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property or to the chances of trade.” In this particular ease the sales and purchases were made as part of a general business, by way of speculation, and Zel *72 ler’s judgment and industry were brought to bear, and entered as '.factors in making both.'
We need not do more than refer to tins particular feature of this ease, for we do not think a discussion of the rights and obligations of the parties from that standpoint is necessary.
Only a few of the acts of sale and purchase referred to in the briefs and in the evidence are in the record. We have examined these, and we find in only one of them a declaration made by Zeller that the particular property he was then purchasing was being purchased by him for his separate account, and in that instance only part of the price was paid cash; the balance being represented by promissory notes payable in the. future.
The declarations of appellant in the different acts which he relies upon were “that the money paid by him as the purchase price of the property herein conveyed to him was all his own separate funds, derived from the sale of property owned by him individually before he was married to his present wife.”
The right neither of the wife nor of the husband to prevent the. ownership of property purchased during the existence of the community from falling into the community, and authorizing either to cause it to vest in the one or the other of the spouses separately under special circumstances, is referable in Louisiana to any express article ,of the Code. It rests upon jurisprudence. Article 1434 of the Code Napoleon deals with that subject. It is as follows (see Dalloz & Vergé, under article 1434): “Le remploi est censé fait a l’égard du mari, toutes les’ fois que, lors d’une acquisition, il a declaré qu’elle était faite des deniers provenus de l’aliénation de l’immeuble qui lui était personnel, et pour lui teñir lieu de remploi.”
It has been held in Prance: That, in order that property purchased by the husband during marriage should become his separate property, he should, in the act of purchase, make the double declaration, first, that it is bought with the proceeds of a sale of property belonging to himself individually; second, that the purchase is made for the purpose of replacing the property sold (pour servir de remploi). That the making use of only one of these declarations is insufficient See Dalloz & Vergé, Codes Annotés, under that article.. ., ...
The reáson fon this, doubtless, is to bind the husbancl irrevocably, so that he should be unable to subsequently abandon the property to the..community in order to exercise upon it, as a creditor, a right of priority for the replacement of the sum expended for its purchase. A mere statement by the husband that the payment price of the property was made with his separate funds is not inconsistent with the fact that the ownership was intended to be vested in the community. It would simply place of record a declaration in aid of a claim for reimbursement. We do not mean to say that the purchase of property by the husband for the purpose of replacing therewith separate property which he had sold should be contemporaneous with the sale of his own property, nor that the later purchase should be with identically the same money; but we do think that the husband should be able to establish affirmatively that the amount received by him for his separate-property had not been, before being used for the purpose of reinvestment, already used for the purchase of community property. If it was once used for that purpose, we do not think he would be entitled to replace the amount in his separate estate at his own will as to time, and with a choice of circumstances and conditions, out of the price of community properties which might thereafter be-sold. In other words, if a husband should, after selling separate property for $5,000,. use the proceeds in the purchase of property for the community, we do not think he would be authorized to repay himself the amount so used, and to appropriate the same, during-the community, for his separate use and benefit, as a paraphernal reinvestment of real-estate, out of the proceeds of sales which-might be made of community property.
The moment his paraphernal funds have been used in manner such as to give rise to a claim on his part against the community, matters must remain in that situation during-the community. To recognize in a husband the right of controlling at his own will the situation between himself and the community and his own creditors, and the creditors of the community, would, as we said in the-case of Hero v. Bloch, 44 La. Ann. 1036, 11 South. 821, be neither advisable nor permissible.
In that case we said: “Plaintiff claims that- *74 there should be an equality between the spouses, and inasmuch as the wife has been held to be authorized to purchase property in her own name, and support the purchase as ■one for her separate account by proof of the fact that her paraphernal funds were used in its acquisition, and this without the necessity of a recital to that effect in the act, the husband should be permitted to do likewise. It is true that equality should be the rule of the community, but there are considerations in this matter affecting others than the parties to the community, which are not to be lost sight of. The public are interested in that subject.
(March 30, 1903.)
“When the title of real estate is placed in the name of the wife during the community, the public is put upon its guard and on inquiry as to actual existing facts; but title to property in the husband, with no indication in the act of purchase as to the cliaracter of the funds with which it is bought, and none of present intention of owning the property for separate account, conveys no notice, and the husband is left free to fix, at such time as might subsequently suit his convenience, or in such way as might best subserve his after interests, the tenure by which it is to be held. The title would be an uncertain, floating title, neither advisable nor permissible.” Succession of Burke, 107 La. 82, 31 South. 391.
The parties have, by consent, attached to the transcript a list of the various properties bought and sold by Zeller, and the prices of the purchases and of the sales; but we think the defendant has failed, under the evidence, to establish the exceptional condition of things which would justify us in holding that the properties bought by him during the community, and which are in litigation herein, do not belong to the community, under the operation of the general rule of law announced in article 2402 of the Civil Code, but belong to himself separately and individually. We are unable to trace the $2,900 which he derived from the sale of his separate property into three pieces, through the successive acts of sale and purchase of real estate made during the community, in a manner such as to declare his claim of ownership of the same to be well grounded. We find no error in the judgment which decrees these properties to belong to the community, and which remits him for relief to a claim as a creditor.
The district judge rendered judgment in favor of the defendant Henry Zeller for $3,900. This amount is evidently made up of the sum of $2,900, amount of the proceeds of the sales of his three pieces of separate estate, applied to the use and benefit of the community, and the sum of $1,000, placed in the hands of his wife for safe-keeping, and claimed not to have been returned by her. The evidence establishes that she returned to him $400 of this amount prior to her death. The judgment should therefore be reduced on this item. by $400. Appellees pray that the judgment in favor of Henry Zeller as a creditor should be reduced by the sum of $2,481, amount paid by him after his marriage in settlement with four of his children by a prior marriage.
The evidence establishes that these children had a mortgage, bearing interest, upon the separate property of their father, by reason of the same having once belonged to the community between him and their mother, and subsequently adjudicated to him under article 343 of the Code; also that this mortgaged property, with the exception -of three lots, remained during the second marriage in the ownership of the father, bearing rents. Four of the children were paid during the second marriage $2,481, under the conditions and circumstances stated.
We think that Zeller was authorized to apply the rents of the property mortgaged to the payment of the children, using only the balance as profits for the benefit of the community. Civ. Code, art. 2402.
For the reasons herein stated, it is hereby ordered, adjudged, and decreed that the judgment of the district court in favor of Henry Zeller be reduced to $3,500, with interest thereon, as given in the judgment, and that, as so amended, the judgment be, and it is hereby, affirmed, with costs of appeal to be paid by Henry Zeller.