On the Merits.
 

 By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.
 

 THOMPSON, J.
 

 The three plaintiffs, Mrs. Lilly Julia Kittredge Grant, Mrs. Sinagh Gage Kittredge Eournier, and Mrs. Annie Kittredge Dell, are the sisters of George W. Kittredge, who died in this city on September 26, 1915, intestate, and without ascendants or descendants.
 

 He left a surviving widow, Mrs. Augusta Grau Kittredge, who was by judgment of the court ordered sent into possession as owner of all the property belonging to the community existing between her and her said husband. The widow died in the latter part of 1918, leaving a last will and testament by which she instituted the defendants Mrs. Agnes Grant Robinson, Mrs. Juanita Robinson Wade, and Edward G. Grau as her universal legatees.
 

 These parties were by judgment of court sent into possession of all of the property bequeathed to them by the will. Included in the property taken possession of by the legatees was 15 shares of the par value of $100 each of the capital stock of the Kittredge-Waters Supply Company, a corporation organized under the laws of this state and domiciled in this city.
 

 The object of the present suit is to compel the legatees to surrender to the plaintiffs the shares of stock referred to, and in default that the plaintiffs have judgment against them for the value of the stock, which is alleged to be $25,000. In the alternative it is prayed that, should the court hold that the said corporate stock was not the separate
 
 *159
 
 property of Kittredge,
 
 but
 
 belonged to the community between Kittredge and his wife, then that plaintiffs have judgment for $5,000, being the value of the separate property of Kittredge which went to pay for said stock.
 

 The district judge rejected the primary demand of the plaintiffs, but awarded them judgment for $2,860.50 on the alternative demand, being the value of the separate prop1erty of George W. Kittredge which was used in purchasing or paying for the stock. The plaintiffs appeal from this judgment.
 

 It is obvious from what has already been said that the question to be determined first of all is whether the corporate stock was the separate property of Kittredge, or- whether it was an asset of the community between Kittredge and his wife.
 

 There is no dispute as to the facts. In the early part of 1903 Kittredge, Borelli, Grau, and Bergen entered into a copartnership which was styled Borelli & Kittredge, to engage in the ship chandlery and machine shop business in this city. Each of the partners contributed to the partnership $2,500. At the time of the formation of this partnership Kittredge was a single man, but in July of the following year he was married to Miss Augusta Grau. In August following, by mutual consent of all four members, the interest of Borelli was bought by the other members of the firm for $2,500 in cash and some other minor considerations, all paid out of the partnership funds, and the said Borelli was let out.
 

 Thereafter H. II. Waters was admitted into the firm as an equal partner. On August 22, 1904, the members agreed to organize a corporation under the name of Kittrodge-Waters Supply Company with an authorized capital stock of $20,000. The four members of the partnership) were to be the incorporators; and were to have $2,500 each of' the capital stock; that is to say each member was to receive 25 shares of the par value of $100 each, and the said stock was to be paid for by the assets of the partnership valued at $10,000. In accordance with this agreement among the partners a regular charter was prepared and signed in due form by the four members, each following his signature to the charter with the words: •'i25 shares stock.”
 

 The charter contained the provision that the capital stock could be paid for in cash or its equivalent. The name on- the books was changed from that of the partnership to that of the corporation, and a like change was made in the account with the bank. Otherwise the business was carried on the same as had been the partnership. There were no purchasers of stock outside of the four original incorporators, and no certificates of stock were ever issued to any of them until some time after the death of both Kittredge and his wife. It was the common understanding, however, and never questioned by any one, that each of the four members of the partnership owned an equal interest in the capital stock of the corporation which had taken over the assets of the firm, and as a matter of fact succeeded to the firm.
 

 From time to time the four stockholders were paid dividends from the earnings of the corporation on the amount, of stock owned by them respectively. Some years after the organization of the corporation, "Waters being unable to pay for his stock in full, by common consent the other three drew out of the capital of the corporation $1,000 each, thereby reducing the capital stock to $1,500 each, or $6,000 for the four. It may be stated that tlie charter
 
 authorized
 
 the corporation to operate on a paid-up capital stock of not less than $5,000.
 

 The theory on which the case was decided in the court below is that, when the corporation was formed, and Kittredge signed the charter, he thereby became a subscriber to the capital stock and a debtor to the corporation payable in money or in property at the option of the corporation; that a debt was
 
 *161
 
 thus created on behalf of the community, and, when Rittredge turned over his interest in the firm in settlement of that debt, the stock received became an asset of the community. In other words, that the transaction evidenced a dation en paiement.
 

 If the premises on which the conclusion was based were as a matter of fact true, then undoubtedly the conclusion is correct, and this would be so by whatever name the transaction may be called, whether a giving in payment or a sale or an exchange.
 

 It is codal law (O. C. art. 2404) that all property purchased during the existence of the marriage, whether taken in the name of the husband or the wife, is presumed to be community property. The presumption may be rebutted by the wife, even though the act of purchase fails to recite that the purchase was made with her separate funds. But with respect to the husband the presumption that he purchased for the community is absolute and conclusive against him and his heirs, unless the act recites that the purchase was made with his separate funds. Sharp v. Zeller, 110 La. 61, 34 So. 129: Succession of Billis, 124 La. 117, 49 So. 998; Ramsey v. Beck, 151 La. 191, 91 So. 674.
 

 The rule stated finds no'application, however, where the transaction on its face shows that the purchase was not in fact a community acquisition, but, was a purchase or acquisition by the separate spouse.
 

 It is well settled that, where separate property of the husband or wife is given in exchange for other property, the property so received in the exchange partakes of the same character — that of separate property. And this is true whether the property the subject of the exchange was immovable, movable, or incorporeal.
 

 In Newsom v. Adams, 3 La. 231, it was held:
 

 “Where paraphernal property of the wife is given in exchange, that received in place of it partakes of the same character.” Syllabus.
 

 Mr. Justice Matthews saying in the opinion:
 

 “Pothier, Contracts of Sale, part 7, No. 629, states it to be one of the principal effects of an exchange, that the thing is subrogated in full right to that which was alienated; .subrogatum capit naturam subrogati.”
 

 See to the same effect Lawson v. Ripley, 17 La. 238; Percy v. Percy, 9 La. Ann. 185; Troxler v. Colley, Sheriff, 33 La. Ann. 428; Dillon v. Freville, 129 La. 1014, 57 So. 316.
 

 If the rule was given the rigid construction as contended for, and as appears to have been the opinion of the learned trial judge, then property received in exchange for the separate property of the husband during marriage could never be impressed with the character of separate property of the husband, unless there was a written instrument effecting such exchange and a declaration therein that the property given in exchange was the separate property of the husband. To adopt such a construction would require every exchange made by the husband of his separate movable property-or his separate incorporeal rights to be reduced to writing. And the property acquired. by the husband during marriage at a partition sale paid for by means of his heritable share would lose its character as separate property and fall into the community. And a heritable right falling to the husband would fall into the com-, munity, for such rights pass by an unwritten and unregistered title with no opportunity to make the declaration contended for.
 

 The legal conclusion is inevitable that, if the transaction involved in this case was an exchange of the separate property of the husband for the stock in the corporation and not the payment of an obligation in money created by the husband as a subscriber for the stock, then the stock became the separate property of the husband, regardless of the name by which the transaction may be called, and regardless of the fact that no declaration was made by the husband at the time
 
 *163
 
 that he was trading for the stock as his separate property.
 

 The evidence in our opinion is conclusive, and not open even to controversy in point of fact or in law, that Kittredge never at any time became obligated to pay any sum of money to the corporation for the stock. The relation of creditor and debtor in the sense of a money obligation never at any time existed between the corporation and the incorporators. Kittredge and his partners were the incorporators and stockholders simultaneously, but were never subscribers for any stock to be paid for in money. The four agreed to take 25 shares each of the capital stock and to pay for the same by turning over to the corporation the business and assets of the partnership in its entirety and in globo. This agreement in effect was embodied in the charter. The alternative of giving the property of the firm for the stock was reserved to the incorporators, and the right to require payment for the stock in cash was not given to the corporation. Neither of the corporators ever bound himself unconditionally or otherwise to pay the price of the stock in money, and the corporation was without right or authority under the express terms of the charter to have compelled the four incorporators to pay for the stock in money.
 

 The business and assets of the old firm passed under the control and in full ownership of the corporation at the very moment the act of incorporation was completed and signed, and the four stockholders were entitled at that moment to their stock certificates. There was no interval between the signing of the charter and the translation of the property of the firm to the corporation. The thing, the price, and consent all existed before the act of incorporation, and that act, when signed, put the contract into execution, and became the evidence thereof, and was binding on all parties. Indeed, this is admitted in paragraph 14 of defendants’ answer, wherein it is stated:
 

 “* * * That each of said incorporators, including the said George W. Kittredge, subscribed on said charter to 25 shares of the capital stock of the par value of $100 each; that, contemporaneously with said subscription, the said George W. Kittredge, W. P. Bergen, and.Edward G. Grau each paid for 15 shares of their said subscription in property, which property was valued by the board of directors at the sum of $1,500 each.”
 

 Under this admission and the facts as we have stated them, which are shown by the testimony of some of the original incorporators who had personal knowledge of the entire transaction and by the books of the firm and of the corporation as shown by the testimony of the expert accountant, we are unable to arrive at any other conclusion than that Kittredge never at any time became obligated to pay for his stock in money, but that at the very moment he signed the charter he and his copartners paid for the stock with their respective interest in the firm. None of the parties ever consented to or contemplated anything else. The transaction amounted in law to an exchange and nothing more. It was not a dation en paiement, for there never was a debt payable in money due by Kittredge to the corporation.
 

 It is conceded that the property given in exchange for the stock was the separate property of Kittredge. It follows from the authorities already cited supra that the corporate stock received in exchange was impressed with the same character, or, as said in Newsom v. Adams, supra, the stock was “subrogated in full right to that which was alienated.”
 

 The evidence shows that the stock had been reduced from 25 to 15 shares before the death of Kittredge. It follows that only the latter amount was received by the widow and transmitted in the will to her legatees. This fact is shown by the Judgment sending the legatees into possession under the will. Whether the plaintiffs are entitled to the $1,000 withdrawn from the capital of the corporation during the community depends
 
 *165
 
 on a settlement of the community which is not involved in this litigation.
 

 For the reasons assigned it is ordered and decreed that the judgment appealed from be and the same is annulled and set aside, and it is now adjudged and decreed that the plaintiffs have judgment against the defendants, decreeing them to be the own'ers of 15 shares of the capital stock of the KittfedgeWaters Supply Company, Ltd., and that the same be turned over to plaintiffs by the defendants. All other rights which the plaintiffs may have against the community between Kittredge and his wife are reserved. It is further ordered that defendant pay all costs of this suit.