HALL, Judge.
George Monroe Moore and Billye Bryant Moore were married on January 16, 1959. On May 3, 1967, Mr. Moore was granted a judgment of divorce from his wife. Subsequently, he filed a petition for settlement of the community of acquets and gains which formerly existed between him and Mrs. Moore. Pursuant to order of the court, an inventory of the community property was filed. The inventory did not show that the separate estates of either Mr. Moore or Mrs. Moore were indebted to the community in any amount, nor did it show any indebtedness by the community to the separate estates of either of the parties.
Both parties filed rules to traverse the inventory asserting numerous claims. The rules to traverse were consolidated for trial.
A number of disputed items were resolved by stipulation or by rulings of the court from which no complaint of error is made on this appeal. The items which remain contested on appeal include:
(1) Mr. Moore’s claim that the separate estate of his former wife is indebted to the community to the extent of the payments which the community made on account of the principal on the mortgage indebtedness affecting Mrs. Moore’s separate property.
(2) Mrs. Moore’s claim that the separate estate of Mr. Moore is indebted to the community to the extent of the payments made by the community on principal, interest, taxes and insurance for the benefit of his separate property.
(3) Mrs. Moore’s claim that $1,000 of the total amount paid on the mortgage affecting her separate property was her separate funds given to her by her husband as an anniversary gift, thereby reducing her indebtedness to the community in that amount.
(4)Mrs. Moore’s claim of ownership of ten shares of A. T. & T. stock. This stock was listed in the inventory as an asset of the community of acquets and gains. Mrs. Moore contends that the stock is her separate and paraphernal property.
With reference to the matters in dispute, the district court found:
(1) Mr. Moore’s separate estate is indebted to the community in the sum of $6,600.03 — the amount paid by the community for principal, interest, taxes and insurance on his separate property.
(2) Mrs. Moore’s separate estate is indebted to the community in the sum of $5,734.26 — the amount paid by the community on the principal of the mortgage indebtedness affecting her separate property.
(3) The $1,000 alleged by Mrs. Moore to be a gift from her former husband was not, in fact, intended to be a gift so as to become her separate funds, but was placed in her hands for the purpose of reducing the mortgage indebtedness on Mrs. Moore’s separate property.
(4) The ten shares of A. T. & T. stock are community assets and the community is indebted to Mrs. Moore in the sum of $117.78 — the amount paid by her on the purchase price of the stock out of her separate funds prior to the marriage.
Mr. Moore appealed. Mrs. Moore answered the appeal.
The issues presented on this appeal are:
(1) To what extent, if any, should the community be reimbursed for amounts paid for principal, interest, taxes and insurance on account of the separate property of each of the spouses?
*195 (2) Whether the $1,000 was a gift to Billye Moore and was, therefore, her separate property.
(3) Were the ten shares of stock properly classified as community assets?
Prior to their marriage both of the parties to this litgation owned separate property. Mr. Moore owned a residence at 3839 Eileen Lane in Shreveport and Mrs. Moore owned a home at 3751 Lillian Street in Shreveport. After they were married, the couple occupied Mr. Moore’s property as the family home. The property belonging to Mrs. Moore was rented.
On the date of the marriage there was a mortgage indebtedness outstanding on each of their separate properties. During the marriage, the monthly payments on both mortgage notes, in principal and interest, were made with community funds derived from Mr. Moore’s earnings, Mrs. Moore’s earnings and rental from Mrs. Moore’s property. In addition, the taxes and insurance premiums for both residences were paid out of community funds. At the trial it was stipulated or proved that the following amounts were actually paid with community funds:
On Mr. Moore’s separate property:
principal $2,066.14
interest 2,924.78
taxes and hazard insurance premiums 1,294.44
mortgage insurance premiums 314.67
Total $6,600.03
On Mrs. Moore’s separate property:
principal $5,734.26
interest 1,599.34
taxes 145.57
insurance premiums 919.12
Total $8,398.29
It was also proved at the trial that during the marriage the rental income from Mrs. Moore’s separate estate amounted to $5,545.
The first issue presented is the extent to which Mr. Moore’s separate estate is indebted to the community.
Counsel for Mr. Moore concedes that his separate estate is indebteded to the community for the amounts paid on the principal of the mortgage note on his separate property. He argues, however, that the amounts paid for interest, taxes and insurance are not chargeable to his separate estate for the reason that the community used his separate property during the marriage and benefited by it. Principally, he relies on the case of Succession of Boyer, 36 La. Ann. 506 (1884) in support of this position.
In that case, the decedent purchased a residence prior to his marriage to his second wife. He and his wife occupied this house while they were married up to the time of Dr. Boyer’s death. The purchase was made on terms of cash and credit and the credit portion, including both principal and interest, was paid after his marriage. In addition, the community paid for the taxes, repairs and insurance on the residence. The court held that the community was entitled to reimbursement from Dr. Boyer’s separate estate for the amounts it paid for the principal and interest on the credit portion of the purchase price of his separate property. With reference to the taxes, repairs and insurance payments, the court held “the community is properly chargeable with the taxes, repairs and insurance on the separate property used by it” (Emphasis supplied), and, therefore, the separate estate was not indebted to the community for these items.
The principles enunciated in Boyer have not been overruled. In Harris v. Harris, 160 So.2d 359 (La.App. 4th Cir. 1964), the case relied on by the district court for its ruling, Succession of Boyer was cited with approval. Applying the principles of Boyer to the present facts, the trial judge erred in ordering Mr. Moore to reimburse the community for the taxes and insurance on his separate property, for the reason that this property was “used” by the community.
*196 ' In Pennison v. Pennison, 157 So.2d 628 (La.App. 4th Cir. 1963), the husband had acquired immovable property prior to his marriage. He paid a portion of the purchase price in cash and issued a note for the balance. After they were married the parties occupied this residence as the family home and community funds were expended to pay the monthly installments on the note. The court held that Mr. Penni-son’s separate estate was indebted to the community for all the payments made on the note out of community funds. This decision is in accord with the holding in Boyer, supra, inasmuch as the latter case also held that the separate estate was liable to the community for the payments made on the mortgage indebtedness.
A claim was not made for reimbursement to the community for the amounts paid, if any, for taxes and insurance on the husband’s separate estate in Pennison. Therefore, that case is inapplicable to our decision with reference to the taxes and insurance payments made on Mr. Moore’s separate estate.
The judgment should be amended to reduce the amount of Mr. Moore’s indebtedness to the community by $1,294.44, the amount paid for taxes and hazard insurance.
The next issue presented is the extent to which Mrs. Moore’s separate estate is indebted to the community by reason of payments made out of community funds in connection with Mrs. Moore’s separate property. Payments were made totaling over $8,000 including principal, interest, hazard insurance and taxes.
The trial court, relying primarily on Harris v. Harris, supra, held that Mrs. Moore’s separate estate was indebted to the community in the amount of $5,734.26, being the amount paid on the principal of the mortgage indebtedness. The trial judge held that Mrs. Moore’s separate estate was entitled to credit against the community for revenues produced by the property to the extent of the amounts paid for interest, insurance and taxes. Both parties concede that the judgment is correct insofar as it allowed the credit against interest, insurance and taxes.
Mrs. Moore contends, however, that her separate estate should also be allowed a credit against the principal payments made on the mortgage to the extent of the rentals produced by the property. The rental income from the property during the marriage totaled $5,545. If this amount were credited against the total payments of principal and interest, insurance and taxes made, the balance owing by the separate estate of Mrs. Moore to the community would be $2,864.29. Counsel for Mrs. Moore argues that the decision in Harris is incorrect insofar as it held that payments made on the principal of a mortgage should not be offset by revenues produced by the property. Mrs. Moore relies primarily on Sharp v. Zeller, 110 La. 61, 34 So. 129 (1902) and Succession of Brunies, 209 La. 629, 25 So.2d 287 (1946).
In Sharp v. Zeller, the Supreme Court held that the husband was authorized to apply the rents of his mortgaged separate property to the payment of the interest bearing mortgage, “using only the balance as profits for the benefit of the community”, citing Article 2402. The opinion does not state whether the payments on the mortgage were of principal or interest or both, but in Succession of Ratcliff, 209 La. 224, 24 So.2d 456 (1945), the Supreme Court described the debt due in Sharp v. Zeller as “interest due under a mortgage.”
In Brunies, the Supreme Court held that the separate estate'was not indebted to the community for amounts paid out of community funds for principal and interest on mortgages, insurance premiums and taxes, in that revenues from the separate property exceeded the amount of such payments. The court held that the items paid were necessary expenses for the maintenance and preservation of the property. It should be noted, however, that insofar as the mortgage payments of principal and interest are *197 concerned the mortgages in the Brunies case were placed on the property during the existence of the marriage and were clearly community debts.
In Succession of Ratcliff, supra, the Supreme Court held that the separate estate of the deceased husband was not indebted to the community for payments made out of community funds of $500 per month to the decedent’s first wife under a property settlement agreement. The court held that the payments were in the nature of interest on a principal obligation owed by the decedent to his first wife. The court held that the ordinary expenditures required in the production of profits and in the preservation of the property should be borne by the community where the property produced revenues that fell into the community. In Ratcliff, the court did not deal with payment of the principal debt since it did not appear that any payment was made on principal during the marriage.
Civil Code ■ Articles 2386 and 2402 provide, in effect, that the fruits or profits of separate property fall into the community. In a sense, the position of the community as to the separate property of one of the spouses is like that of a usufructuary. Under Article 544, a usufructuary is entitled to the civil fruits from the property subject to the usufruct and under Articles 570 and 578 the usufructuary is liable for all the necessary expenses for the preservation and working of the estate subject to the usufruct and for all the annual charges to which the thing subject to the usufruct may be liable, including taxes, necessary repairs and the like. Similarly, while the community is entitled to the fruits or profits from the spouse’s separate property, it is only fair and logical that the community be charged with the expenses of administering and preserving such separate property and the annual charges to which the property is subject. See Succession of Boyer, supra; Wilcox v. Henderson, 9 La.Ann. 347 (1854); Courrege v. Colgin, 51 La.Ann. 1069, 25 So. 942 (1899). Thus, in the instant case there is no indebtedness due by the separate estate to the community for amounts paid for taxes and insurance. Further, under the cases previously cited, interest has been placed in the same category as ordinary and necessary expenses such as taxes and insurance. We do not necessarily agree that interest on a mortgage indebtedness should be placed in the category of an expense for the preservation or maintenance of property, but we adhere to the jurisprudence in this regard, and in any event, Mr. Moore concedes the correctness of this portion of the judgment.
Payments on the principal of a mortgage indebtedness clearly do not fall in the same category. Article 2403 provides that the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects.
That part of the judgment amending the inventory so as to reflect that Mrs. Moore is indebted to the community in the amount of $5,734.26 (the amount of community funds paid on the principal of the mortgage indebtedness) -is affirmed.
Next, Mrs. Moore contends that the court below erred in holding that all forty-six shares of A. T. & T. stock were community property and failing to hold that ten of the shares of said stock were her separate property. Mrs. Moore was employed by the telephone company prior to the marriage. From time to time the company gave its employees the option of purchasing stock in A. T. & T. By virtue of one of these options, Mrs. Moore agreed, prior to the marriage, to purchase five shares, which split two for one after the marriage. The price was to be paid by payroll deduction and it was not until the total price was paid that the shares were to be delivered. Under the company purchase plan, she could withdraw at any time prior to the completion of payment and delivery of the stock. If she had decided to with *198 draw, the amount already paid in would have been refunded or she could have taken the number of shares of stock paid for at the time of withdrawal. At the date of the marriage, Mrs. Moore had paid $117.78 through payroll deductions, but the balance of the price of the shares was not paid for and the stock was not delivered until after the marriage.
The lower court correctly held that the ten shares of stock were community assets for reasons which we quote with approval from the trial judge’s reasons for judgment :
“In this case, Mrs. Moore did not receive her stock until after the marriage to Mr. Moore. Mrs. Moore contends that the circumstances here would be controlled by Article 2439 and Article 2456 of the Civil Code. Both of these articles relate to when a sale is complete. The Court recognizes the law enunciated by these two articles. However, we feel that neither covers the situation where one as a purchaser or the seller has a right to withdraw or cancel at any time. We feel that in view of the fact that Mrs. Moore-, was free to withdraw at any time prior to the actual completion of the purchase and until the price had been completely paid and stock delivered that this sale had not been completed until such time as Mr. and Mrs. Moore were married. For this reason we feel that the ten shares of American Telephone and Telegraph stock does form a part of the community, but that the community owes Mrs. Moore’s separate estate the sum of $117.78.”
The next issue presented involved a $1,000 check given by Mr. Moore to Mrs. Moore on January 18, 1964. Mrs. Moore contends that this check was intended as an anniversary gift from her husband, and, therefore, became her separate and para-phernal funds. On the other hand, Mr. Moore asserts that it was given to his wife to pay on the principal balance due on the mortgage note affecting her separate property.
At the trial, both parties gave their version of what Mr. Moore’s purpose was in handing his wife the check. The district judge found, and we believe correctly, that the testimony of Mr. Moore was “much more believable” as to what was really meant by the check. The testimony showed that just prior to January 18, 1964, Mr. Moore had been to the doctor and learned he would not be able to work much longer. He discussed this with Mrs. Moore and together they decided they would try to pay off the note on Mrs. Moore’s house so that if he did have to quit working they would only have one note to pay, i. e., the note affecting his separate property. Therefore, we believe that the $1,000 check was not intended as a gift to Mrs. Moore and did not become her separate property.
At the trial of this case it was stipulated that Mrs. Moore’s separate estate owed the community for life insurance premiums for seventy-two months in the amount of $360 and dividends on the A. T. & T. stock received by Mrs. Moore after the separation of the parties from 1965-1970 in the amount of $596.90 or a total of $956.90. Counsel has called our attention to the fact that these amounts were inadvertently omitted from the judgment of the lower court. The judgment should be amended accordingly.
For the foregoing reasons the judgment of the trial court is amended to reduce by $1,294.44 the amount owed to the community by Mr. Moore. It is further amended to increase by $956.90 the total amount owed by Mrs. Moore. In all other respects the judgment is affirmed.
Amended and affirmed.