(100 South. 68)

No. 25985.

RODRIGUEZ et al. v. SUCCESSION OF McFETTRIDGE.

(Feb. 18, 1924.   Rehearing Denied by Division C May 5, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Wills ⟨⟩55(1)—Evidence held to require finding that testatrix was wanting in testamentary capacity.**

In suit to set aside nuncupative will by private act, evidence *held* to show that testatrix did not have testamentary capacity.

2. **Wills ⟨⟩52(3)—No presumption of execution of nuncupative will during lucid interval where not prepared personally by testatrix.**

Provisions of nuncupative will not prepared personally by testatrix cannot be relied on as establishing presumption that it was executed during a lucid interval, where insanity of testatrix had been continuous for four years.

3. **Wills ⟨⟩52(3) — Burden of showing that will was not executed during lucid interval stated.**

While burden of proof is on those who attack a will to show it was not executed during a lucid interval, where habitual insanity is established, burden shifts to proponents where will was not written by testator and evidences sanity on its face because of its judicious provisions.

4. **Husband and wife ⟨⟩256, 262(1)—Property acquired during marriage presumed community property.**

Presumption of law is that property bought during marriage in name of either spouse falls into community, and, when husband buys in his name as investment of separate funds for individual account, such intention and character of funds used must be stated in the act, or the property will belong to the community.

5. **Husband and wife ⟨⟩255—Property purchased by husband with funds borrowed on wife's security held to belong to community.**

Where husband when he married had no property at all, but bought land in his own name with money borrowed on security given by his wife, and the deed acknowledged the existence of the community, but did not mention character of funds, such property belongs to community.

6. **Husband and wife ⟨⟩249—Notes in settlement of first community held to belong to wife's separate estate.**

Notes in payment of wife's interest in community formerly existing between herself and former husband *held* to belong to wife's separate estate.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; L. B. Aldrich, Judge ad hoc.

Suit by Robert Rodriguez and another to have declared invalid a nuncupative will of Mrs. Margaret Muller McFettridge, deceased, opposed by Henry McFettridge, universal legatee, and his curator ad hoc. Judgment for defendant, and plaintiffs appeal. Reversed and rendered.

Dupont & Dupont, of Plaquemine, and Fred G. Benton, of Baton Rouge, for appellants.

Kernan & Wall and Jos. L. Brunot, all of Baton Rouge, for appellee.

W. G. Randolph, of Baton Rouge, Curator ad hoc.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. This is a suit to have declared invalid a certain nuncupative will, purporting to be by private act, and which was executed by Mrs. Margaret Muller McFettridge on January 9, 1921.

The testatrix died in the city of Baton Rouge, La., on June 20, 1921, without ascendants or descendants.

The petitioners, Mrs. Sallie Daigle and Robert Rodriguez, are respectively the niece and nephew of the deceased, and her nearest relatives in the collateral line.

The will institutes Henry McFettridge, the husband of the testatrix, as her universal legatee, and was probated and ordered executed by a judgment of the district court of the parish of East Baton Rouge rendered in July, 1921, and the legatee was sent into the possession of the estate. The invalidity of the will is based by petitioners upon three grounds:

(1) Because three of the five subscribing witnesses, namely Joe Bernstein, Edmund Macey, and T. D. Newsham, were not residents of the parish of East Baton Rouge wherein said will was executed, or even residents of the state of Louisiana, at the time of the confection of said will.

(2) Because the testatrix was insane at the time of the execution of the will, and wholly incapable of understanding or appreciating the consequences of her act.

(3) Because said will was the consummation of a fraudulent scheme on the part of Henry McFettridge to defraud the deceased out of her property and the petitioners out of their rights.

During the pendency of the suit, McFettridge became insane, and was committed to the insane asylum at Jackson, La., under Act 253 of 1910, and a curator ad hoc was appointed to represent him in these proceedings.

[1] Pretermitting all of the grounds of attack upon the will, except that of insanity of the testatrix, it is clearly deducible from the testimony in the case that, at the moment of the execution of the testament, January 9, 1921, the mind of the relatrix was so impaired as to make it an untrustworthy vehicle for the conveyance of her true will or wish.

A correct picture of the mental condition of the testatrix during the period December, 1918, to January 19, 1919, is shown by the testimony of Dr. Sam D. Wall, the physician in attendance during that time. The testatrix was in a comatose condition when she first came under his observation, from a stroke of paralysis, designated by him as motor paralysis of arm and leg. She was suffering from apoplexy and softening of the brain. While the physical condition of the testatrix improved, under the treatment, so that she could walk without support and was able to feed herself, her mental condition remained defective. The witness testifies that "she was mentally irresponsible at the time she passed from under my treatment (January 19, 1919), my conclusion being based on her inability to converse intelligently or understand a conversation between others," and he states that it was a form of mental irresponsibility that could be easily detected by the casual observer. The witness also says that "she was absolutely not mentally responsible or possessed of such mental soundness as would have enabled her to appreciate the significance of a contract or give expression in any way to what may have been her true will or wish."

Prior to this period petitioner had suffered a stroke of paralysis in 1914 or 1915, while in the state of Texas. Dr. Wall attended her during her second stroke in 1918, at the home of Mr. Hochendale, in the city of Baton Rouge. She suffered a third stroke in 1919 while at the Daigle home in Plaquemine. She was stricken the fourth time in 1920, while living at her home on Middle street in the city of Baton Rouge, where she died from the fifth and final stroke in June, 1921.

The mental and physical degeneration of the testatrix in 1919 is clearly shown also by the testimony of Mrs. D. A. Patrick, who operated a boarding house on Lafayette street in the city of Baton Rouge, where testatrix stopped before purchasing her home in that city; by the testimony of Mrs. McCormick, real estate agent, and of Mrs. Bertin, the owner, who refused to sell this property to testatrix, without the consent of Mr. D. M. Reymond, vice president of the Louisiana National Bank, who had taken a personal interest in the management of the business of the testatrix, and whose testimony shows her mental incapacity. It is unnecessary to review the testimony of the relatives of the testatrix and of other witnesses, as it would be nothing short of a miracle for a woman with a softened brain in the year 1918, and clearly mentally deficient at that date, to have regained her normal mental condition by January 9, 1921, the date of her will, when two additional strokes of paralysis had intervened and had been suffered by her between these dates.

· We have the direct testimony of Mrs. Julia Bertin, who sold the testatrix her home in Baton Rouge, as to the mental and physical condition of the testatrix on March 25, 1921, only several months before her death in June, 1921, and only several months after making her will. This witness testifies that at this date, March 25, 1921, "the old lady didn't have her right mind"; that "she was childish," and "not capable of appreciating the significance of a will"; that "she was paralyzed and she could hardly speak; you could hardly understand her at all. She held her head down the whole time; she didn't have her mind at all."

As this was the mental and physical condition of the testatrix about two months and a half after the date of her will, and as her mental condition was defective, on January 19, 1919, it cannot be reasonably presumed that she was of sound and disposing mind at the date of the making of this will, especially because of the nature of the ·disease of the testatrix, softening of the brain. The pressure of the blood clot, resulting from cerebral hemorrhage, being the cause of paralysis, it is clear from the repeated strokes that this clot had never been dissolved or removed at any time, prior to the death of the testatrix. That mental improvement is not possible under such conditions, where the effect of any preceding stroke is to impair both mind and body, is a conceded medical fact. See testimony of Dr. J. J. Robert, the only physician who testified as an expert.

[2, 3] The metal condition of the testatrix is therefore shown to have been habitual, or continuous, from the year 1918. The will in this case was not written by the testatrix; it was not prepared personally by her. Its provisions, therefore, cannot be relied upon as establishing a presumption that it was executed during a lucid interval. We do not well see how such proof could be produced at all under the circumstances of this case. While the burden of proof is on those who attack the will to show that it was not executed during a lucid interval, yet where the condition of habitual insanity is established, this burden shifts to proponents, where the will has not been written by the testator, and evidences sanity upon its face because of its judicious provisions.

Kingsbury v. Whitaker, 32 La. Ann. 1055, 36 Am. Rep. 278; Chandler v. Barrett, 21 La. Ann. 58, 99 Am. Dec. 701; Succession of Morere, 114 La. 513, 38 South. 435; R. C. L. vol. 28, p. 99, par. 50.

Petitioners allege that the succession of Mrs. Margaret Muller McFettridge owes no debts, making an administration unnecessary, and that they desire to accept said succession purely and simply, and to be placed in the possession of its effects. They pray for judgment in their favor against Henry McFet-

tridge, universal legatee in possession, vacating and annulling the order of the district court authorizing the registration and due execution of the last will and testament of Mrs. Margaret Muller McFettridge, declaring said will null and void, and annulling the judgment rendered by said court placing Henry McFettridge in possession of all the property, real and personal, belonging to said succession. Petitioners also allege that a certain improved tract of land, consisting of 15 acres, located in the fourth ward of the parish of East Baton Rouge, and purchased by Henry McFettridge, after his marriage, from Henry K. Farrar in the year 1921, constitutes a part of the separate estate of Mrs. McFettridge, and should be inventoried as such in her succession, as same was purchased by Henry McFettridge with the separate and paraphernal funds of his wife, accumulated by her industry and inheritance prior to her marriage.

The sale in question was passed by authentic act of date May 19, 1920, for a consideration of $300 cash and the balance in six promissory notes, each for $112.50, payable in from 1 to 6 years.

The deed is made by Henry K. Farrar to "Henry McFettridge, married to Mrs. Margaret McFettridge, born Pope, with whom he is now living in the parish of East Baton Rouge, said state, here present, accepting, purchasing and acknowledging delivery and possession for himself and his heirs and assigns."

Henry McFettridge was married to his present wife July 19, 1919. At the date of his marriage he had no means whatever. From the beginning he took charge of the property and funds of his wife and administered the same.

[4] The presumption of law is that property bought during the marriage in the name of either spouse falls into the community. "But when the husband, during marriage, buys property in his name, intending it as an investment of his separate funds, to be held for his individual account and not that of the community, it is essential that some indication of this intention, and of the character of the funds used, be given in the act." Succession of Burke, 107 La. 82, 31 South. 391; Hero v. Bloch, 44 La. Ann. 1036, 11 South. 821.

No mention whatever of the character of the funds used is made in this deed, but the existence of the community of acquêts and gains is expressly acknowledged in the same. This sale, therefore, does not come within the exception announced in the succession of Burke, above cited, but falls within the general rule that where the husband buys property in his own name, during the marriage, such property belongs to the community. The cash payment on the purchase price of this property was made with money borrowed by Henry McFettridge on security given him by his wife. This fact, however, is not recited in the deed, but appears aliunde.

[5] We conclude, therefore, that the 15 acres in controversy belong to the community of acquêts and gains formerly existing between Henry McFettridge and his wife, and that a half interest in said property is owned by the succession of Mrs. Margaret McFettridge, deceased.

Petitioners also allege that five certain promissory notes in the possession of Henry McFettridge should be inventoried as a part of the succession of Mrs. Margaret Muller McFettridge. Each of these notes is for the sum of $1,000, is of date September 1, 1920, and is made payable to the order of Mrs. Margaret McFettridge. The first note matures one year after date, and each of the others upon the same date of each succeeding year. These notes were executed by Chas. J. Muller, Jno. G. Muller, Nora C. Muller, and Attie T. Muller, in settlement of the community existing

156 LOUISIANA REPORTS

between Mrs. Muller and a former husband. The evidence fails to show that McFettridge paid any consideration for these notes, or that he acquired title to them by donation or otherwise. As he assumed the control and administration of all of the property belonging to his wife, his possession of these notes is not indicative of his individual ownership, but resulted solely from his taking charge of the affairs of his wife. His title to the notes in question could emanate only from the last will and testament of his wife, and falls with its invalidity, because of the insanity of the testatrix at the date of its execution. All of the property of the succession of Mrs. Margaret Muller McFettridge, including these notes, was taken into the custody of the district court under a writ of judicial sequestration.

By virtue of an agreement of the parties, and by order of the district court, the note for $1,000 due September 1, 1921, was collected by the sheriff, and the Union Bank and Trust Company of Baton Rouge, which held said note as collateral, was paid the amount of its debt, and the balance was ordered by the court to be retained by the sheriff to await the outcome of this suit, or the further order of the court. Tr. 47, 48, 49.

The above agreement was made August 1, 1922, and was approved by the order of the court August 2, 1922. This agreement and order evidently took the place of a prior agreement and order in reference to the collection of this same note made December 16, 1921, and found at pages 24 and 25 of the transcript.

The second note did not fall due until September 1, 1922, and both of these agreements and orders precede the date of maturity of the second note. We find no further order of the court as to the disposition of the balance of the first note collected.

The judgment dismissing plaintiffs' suit, however, virtually has the effect of decreeing that McFettridge owned the first note and all of the remaining four notes, because of his institution in the last will of Mrs. McFettridge as her universal legatee.

[6] As we have pronounced said will invalid, the balance of the funds arising from this note, and the other notes belong to the separate estate of the testatrix, as all of these notes were given in payment of the interest of Mrs. Margaret Muller in the community formerly existing between herself and her first husband, and no title to same in Henry McFettridge is disclosed by the evidence, otherwise than by virtue of said testament.

It is therefore ordered that the judgment appealed from be set aside and reversed, and that there be judgment in favor of the petitioners and against Henry McFettridge, herein represented by a curator ad hoc, vacating and annulling the order of the lower court authorizing the registration and execution of the last will and testament of Margaret Muller McFettridge, and declaring said will null and void, and annulling the judgment of the lower court placing the said Henry McFettridge in the possession of all of the property belonging to said succession.

It is further ordered that petitioners be recognized as the nearest living heirs of said deceased, and, as such, that they be placed in possession of all of the property of which she died possessed, including the four notes described in the petition, and the balance of the first note retained in the custody of the lower court and also an undivided one-half interest in the 15-acre tract described in said petition. The appellee to pay all costs of this suit.

Rehearing denied by Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.