MORIAL, Judge.
Plaintiff brought this suit for a declaratory judgment seeking a judicial determination of the rights of the parties to a lease agreement involving the parking garage which services the One Shell Square office building in New Orleans.
Plaintiff Blaise Parking and Enterprises Corporation entered into a lease agreement with Gerald Hines, providing plaintiff with the sole and exclusive right to operate a self park garage adjoining the building. Hines assigned his rights under the lease to defendant Project Square 221, (Project) a partnership which owned the One Shell Square office complex. The lease afforded Project several options to lease back car stalls to provide contract parking to the building’s tenants and their employees. An amendment to the lease provided Project with the right to reserve the two top floors of the garage for use by the officials and employees of the Shell Oil Company. The remaining contract parkers were permitted to park throughout the facility except on the first level containing twenty-two spaces which were specifically reserved for Blaise for transient parking. Under the provisions of the lease Blaise was entitled to rent any of the car stalls not in use by contract parkers at any given time to transient par-kers. The transient parking operation is a vital source of revenue to Blaise.
The parking facility consisted of ten levels containing 781 stalls. Customers gain access through a gate on the third level either by taking an automatically dispensed ticket (transient parkers) or by inserting a magnetic card into a slot (contract parkers).
*389 A contract parker when exiting inserts the magnetic card into a slot causing a gate to rise and permitting the parker to leave the garage. The ticket customer must stop at a manned booth and pay a charge based on the amount of time his car was parked in the garage. Plaintiff claims that problems developed with this system because contract parkers allowed transient parkers to use their magnetic cards to exit without payment of the parking fee.
There are several issues before the court. The first issue concerns the number of stalls to which defendant is- entitled to lease back pursuant to the provisions of Article 7 of the lease. The parties are also in disagreement as to the amount of control each has over the operation of the facility and the customers using it. There are also issues involving the award of attorney’s fees, cost and expert fees.
Article 7 of the lease provides:
LESSOR’S CONTRACT AGREEMENT
LESSOR agrees and does hereby let from LESSEE and LESSEE does hereby agree to provide to LESSOR car stalls for the accommodation of the parking and storage of standard size (or compact) automobiles on the following terms and conditions:
(a) Fifty (50%) per cent of all car stalls in the LEASED PREMISES at the rate of $375.00 per stall per year;
(b) It is the intention of LESSOR and LESSEE that of the remaining fifty (50%) per cent of the car stalls LESSEE shall, subject to the provisions of subparagraph (d) below, retain 250 stalls for the accommodation of LESSEE’S in and out, or transient parking patrons;
(c) After deducting from the total number of car stalls in the LEASED PREMISES the fifty (50%) per cent thereof provided for in subparagraph (a) above, and the 250 stalls provided for in subparagraph (b) above, LESSOR may, upon written notification to LESSEE, lease all or any part of the remaining car stalls from LESSEE at an annual rental of $600.00 per stall, less the amount of gross revenue which may be derived by LESSEE from the rental of said stalls to in and out or transient parking patrons during the evening or night hodrs, after 6:00 P.M. o’clock until the next 7:00 A.M. o’clock, Saturdays, Sundays and legal holidays, but in no event shall the annual rental due for each of said stalls under this subparagraph (c) be less than $480.00;
(d)Of the 250 car stalls retained by LESSEE pursuant to the provisions of subparagraph (b) above, LESSOR shall have the right and option, upon written notification to LESSEE, to lease all or any part of said 250 stalls at an annual net rental of $600.00 per stall.
Whatever rent may be due and payable by LESSOR to LESSEE under the provisions of subparagraph (a), (c) and (d) above, shall be designated as “CONTRACT PARKING RENT” and shall be due and payable by LESSOR to LESSEE in monthly increments, commencing on the same date as the first rental, PERCENTAGE or GUARANTEED, is due by LESSEE to LESSOR and in the event LESSOR shall fail to make payment to LESSEE of any monthly increment for any reason on or before the third (3rd) day of the month said amount is due, then and in that event LESSEE shall have the right and is hereby given the express right and privilege of deducting said CONTRACT PARKING RENT from any amounts of GUARANTEED or PERCENTAGE rental which may be due by LESSEE to LESSOR under the terms of this lease and the obligation of LESSOR for CONTRACT PARKING RENT shall be inseparable from the obligation of LESSEE for GUARANTEED and/or PERCENTAGE RENTAL so that LESSEE’S right of offset with respect to CONTRACT PARKING RENT shall at all times apply during the term of this lease. LESSOR further agrees that any vehicle designated pursuant to the rules and regulations established by LES *390 SOR with tenants of LESSOR in other facilities constructed on UNDERLYING PREMISES as a contract car, shall be a vehicle owned or rented by any tenant in the facilities constructed on UNDERLYING PREMISES or any employee of any such tenant, so that CONTRACT PARKING RENT shall not apply to the general public. CONTRACT PARKING RENT shall be due and payable for fifty (50%) per cent of all car stalls as provided for in subpara-graph (a) above, by LESSOR to LESSEE notwithstanding the fact that LESSOR may designate fewer than said number of contract cars as LESSOR shall at all times during the term of this lease have the right to designate up to, at least, fifty (50%) per cent of all car stalls to receive contract cars for parking or storage by LESSEE within LEASED PREMISES. CONTRACT PARKING RENT shall be reviewed at the end of the three first years and at the end of each subsequent three lease years during the term of this lease and CONTRACT PARKING RENT for each car stall shall be increased by the number of dollars that LESSEE’S cost of operation of each car stall in the LEASED PREMISES is increased over the first LEASE YEAR (and the 4th, 7th, etc. LEASE YEARS with respect to subsequent three year adjustments), the first 4th, 7th, etc. LEASE YEARS being the base years and the 3rd, 6th, 9th, etc. LEASE YEARS being the years to be compared to the base year to determine the dollar increase in the cost of operation of each car stall in the LEASED PREMISES. Cost of operation shall include all expenses of LESSEE with respect to the operation, maintenance and management of the LEASED PREMISES, including all items of expense incurred whatsoever. Notwithstanding the provisions of the preceding paragraph in the event LESSOR’S tenant leases provide for acceleration of rent on a proportion or percentage basis relating to expenses of the subject year as related to the base year, then the acceleration as herein-above provided for CONTRACT PARKING RENT shall be on a percentage basis of increase of expenses rather than an acceleration based on dollars of increase of expenses. Notwithstanding any of the above, CONTRACT PARKING RENT shall in no way be reduced below the product of $375.00 times fifty (50%) per cent of all car stalls.
In addition to the CONTRACT PARKING RENT hereinabove provided for LESSOR agrees to indemnify, or pay to, LESSEE the amount of any Sales, excise or use tax LESSEE may be compelled to pay, on the said CONTRACT PARKING RENT.
Subparagraphs (a) and (b) were self-operative at the time the lease was signed. Originally defendant leased back 50% of the stalls or 390 car spaces and Blaise retained 250 stalls for transient parkers. In February 1973 defendant exercised its rights pursuant to subparagraph (c) and leased back the remaining stalls minus the 50% referred to in 7(a) and the 250 stalls in 7(b). In November 1975 defendant exercised its option under 7(d) and leased back the remaining 250 stalls listed in 7(b).
Plaintiff argues that upon exercising the option of subparagraph (c) defendant exhausted all of its options to lease back stalls. Blaise points out language in sub-paragraph (c) giving defendant the right to lease back a11 or any part of the remaining stalls. Blaise contends “that Project was required to elect to lease all the remaining stalls on February 8, 1973 and in not doing so waived any further rights under (d). Plaintiff concludes that defendant is only entitled to lease back 532 stalls.
Project argues that in exercising subpar-agraph (c) it did not in any way waive its rights under (d). Defendant points out there is no language to that effect in the lease.
The second issue concerns the extent of control of the two parties over the regulation of customers and over all operations of the facility.
*391 Blaise argues that it is entitled to have a list of the names and addresses of the contract parkers in order to prevent the contract parkers from misusing their privileges and interfering with the successful operation of the garage. Project contends that it has the exclusive right to deal with its contract parkers and that plaintiff should not be allowed to interfere with the contractual relationship it has with its tenants. Blaise also contends that defendant breached the lease agreement by painting levels of the garage different colors and designating different areas for certain classes of contract parkers and in doing so is discouraging transients from parking in permissible areas.
Project argues that it is entitled to additional magnetic cards in a number in excess of the amount of spaces it rents to enable it to diversify its use of the spaces. Blaise argues that under the terms of the lease defendant is limited to renting to tenants of the building and their employees and should not be in need of additional cards for other uses. Blaise argues that the issuance of an unlimited number of magnetic cards will damage its transient parking business in violation of the lease.
Blaise is also asking the court to fix attorney’s fees and raise the expert fees. Project claims it is not responsible for attorney’s fees and that costs should be equally divided.
The trial judge found in favor of defendant on the issue of the number of stalls to which it was entitled to lease back. The court held that under the lease defendant was clearly entitled to lease back all of the available stalls except, for the 22 stalls on the first level which were specifically excluded by Article 8 of the lease. However, the court concluded that under the lease, Blaise has the exclusive right to operate the garage and to determine where cars would be parked except for the 150 spaces provided for the Shell Oil employees. The court further held that plaintiff was entitled to the names and addresses of the contract parkers and also denied Project the right to receive the extra magnetic cards. The court reserved to the plaintiff the right to have the court fix the attorney’s fees and fixed the expert fee at $200.00. The trial judge held the defendant liable for costs. We are in agreement with the trial court on all issues except the issue dealing with costs.
We find that Article 7 clearly gives defendant the right to lease back all of the stalls in the garage except for the twenty-two spaces on the first level. The only condition to this right was payment of the stipulated rental. We find no merit in Blaise’s contention that defendant was required to exercise its option under subpara-graphs (c) and (d) simultaneously.
Section 1 of the amendment to the lease provides in part:
“Notwithstanding any other provision of LEASE LESSEE shall have the sole and unrestricted right to park cars at any location within the garage facility as LESSEE deems fit and proper and LESSOR shall not have the right to designate particular spaces with respect to the car stalls which are provided for in Article 7 of LEASE with respect to ‘LESSOR’S contract agreement’ except that LESSOR and LESSEE do hereby agree that LESSOR shall have the right to use and designate not in excess of 150 car stall spaces on the top two levels or floors of the garage facility (which “top two levels or floors” are hereby defined to mean those two levels or floors nearest the roof of the garage regardless of whether they be located on the up or down ramp of said garage facility) for use by officials and employees of Shell Oil Company. .
We interpret this amendment to restrict defendant from designating particular areas of the garage for certain classes of contract parkers except for the exception made for Shell officers and employees. Therefore, Project is not entitled to paint the walls or put up signs directing certain classes of contract parkers to park on a certain level. We are not holding that Project is prevented from issuing any rea *392 sonable directives to its parkers but only those concerning parking in a particular area of the garage.
Article 2 of the lease provides in part: “. . . that LESSEE has the sole and exclusive right to operate said garage facility under and pursuant to the terms of this lease to the exclusion of any other person, firm or corporation, . . .
Article 3 provides in part that:
“LESSEE shall always be maintained in the peaceful and undisturbed enjoyment of LEASED PREMISES during the term hereof without the hindrance or disturbance of or by any person, firm or corporation whatsoever, . . .
Defendant Project 221 concedes that the above provisions provide plaintiff with the exclusive control over the operation of the facility. Plaintiffs responsibilities include hiring parking attendants and cashiers, obtaining insurance coverage, and maintaining and repairing the premises. Plaintiff also agreed to hold Project harmless for any liability arising out of the use of the premises. The evidence at trial shows that plaintiff did not enter into the lease solely to perform management duties but also to obtain revenues from transient parking. We find that in order to make such an endeavor financially feasible plaintiff must have some means of controlling abuses by the clientele such as contract parkers allowing others to use their magnetic cards to obtain free parking. Therefore, we find that plaintiff Blaise is entitled to a list of the names and addresses of the contract parkers using the facility.
For the same reason, Blaise is entitled to limit the number of magnetic cards to which defendant is entitled. Excessive number of cards will lend to further abuse of the accounting system and loss of revenues. Since defendant is paid a percentage of the revenues by plaintiff, it is to the advantage of both parties to keep violations in check. Therefore, we find that Project is not entitled to any additional magnetic cards.
ATTORNEY’S FEES, COSTS, EXPERT FEES
LSA-C.C.P. Article 1872 dealing with Declaratory Judgments provides that:
“A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.”
C.C.P. Article 1878 provides:
“Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is considered sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.”
The trial court in its judgment reserved the right of plaintiff to have the court fix reasonable attorney’s fees. The trial judge did not actually award attorney’s fees ruling in conformity with the provisions of LSA-C.C.P. Article 1878. Therefore, in order to obtain attorney’s fees or any other further relief, plaintiff must file a petition for such as provided for in LSA-C.C.P. Article 1878. See Burton v. Lumbermens Mutual Casualty Company, 152 So.2d 235 (La. App. 4 Cir. 1963). -
The trial judge was incorrect in assessing all costs against defendant. Both parties had some responsibility in promoting the litigation and thus the costs should be divided. Miller v. Housing Authority of New Orleans, La.App., 175 So.2d 326, amended in part, 249 La. 623,190 So.2d 75, on remand, La.App., 200 So.2d 704.
We find that setting expert fees and taxing them as costs are matters within the *393 We find that setting expert fees and taxing them as costs are matters within the
For the foregoing reasons the judgment of the district court is reversed as it relates to court costs and all court costs are divided equally between the plaintiff and defendant; in all other respects the judgment of the district court is affirmed.

AFFIRMED IN PART, REVERSED IN PART.

LEMMON, J., concurs and assigns reasons.