357 So.2d 813 (1978)
Myrtle F. PHILLIPS, Individually and as Administratrix of the Succession of Griffin Phillips
v.
Louis NEREAUX, Jr., Irene Phillips Nereaux, and Carolyn June Phillips Hayes.
No. 11739.
Court of Appeal of Louisiana, First Circuit.
February 13, 1978.
Rehearing Denied May 1, 1978.
*815 Samuel C. Cashio, Charles R. Browning, Maringouin, for appellant-defendants, Louis Nereaux, Jr., Irene Phillips Nereaux and Carolyn June Phillips Hayes.
Patrick W. Pendley of Freeman & Pendley, Plaquemine, for appellee-plaintiff, Myrtle F. Phillips, Individually and as Administratrix of the Succession of Griffin Phillips.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This is a suit by Myrtle F. Phillips, widow of Griffin Phillips, individually and as administratrix of the Succession of Griffin Phillips, against Louis Nereaux, Jr., Irene Phillips Nereaux and Carolyn June Phillips Hayes, to have certain sales of land and cattle declared null and void. The defendants appealed the decision of the Trial Court, and the plaintiff has answered the appeal.
Mr. Griffin Phillips was married only once in 1944 to Myrtle F. Phillips and of that marriage two children were born, Irene and Carolyn June. Myrtle Phillips was married twice before her marriage to Mr. Phillips and had three children from those prior marriages. Mr. Phillips was a farmer and raised cattle most of his life. He was in both World Wars and began receiving a veteran's disability pension in 1958.
In 1949, Mr. Phillips bought at a sheriff's sale approximately 300 acres near Rosedale, Louisiana. The deed failed to contain the double declaration; however, the Trial Judge concluded that the separate funds of Mr. Phillips were used to purchase the property.
In 1963 Irene married Louis Nereaux, Jr. In December of 1964 Mr. Griffin Phillips sold to Louis and Irene 3 acres for a cash consideration of $1,500.00 which was never monetarily paid. Louis and Mr. Phillips subsequently built the Nereaux home on that property. The consideration for the property according to the Nereauxs is the effort by Louis to aid Mr. Phillips both before and after his marriage to Irene in the operation of the farm. Appellee concedes the validity of this sale; thus, it is no longer at issue before this Court.
In 1967, for various reasons, Mr. Phillips executed a written lease to Louis Nereaux, *816 Jr. for the property and 70 head of cattle for which $1,300.00 per year rental was charged. It is alleged by the appellee that these were sham leases in order to allow Mr. Griffin Phillips to maintain his veteran's disability pension. On the other hand, the appellants contend that these were valid leases and that Louis took over running the operations of the farm and the cattle from 1967 on. The written leases executed on a yearly basis expired in 1972. Louis claims to have had an oral lease with Mr. Phillips from 1973 to 1974. In January of 1974 Louis claims to have purchased the cattle from Mr. Phillips for $15,000.00. This amount was obtained by Louis Nereaux, Jr. through a loan from the Bank of Maringouin which issued two checks, one for $15,000.00 to Mr. Griffin Phillips and one for $2,000.00 to Louis Nereaux, Jr. The loan was secured by a chattel mortgage on the cattle. At this time the ownership of the cattle is moot because of a rescission of the sale between Louis Nereaux and Griffin Phillips and a return of the cattle to the estate of Griffin Phillips. The controversy remaining is who is entitled to the calf crop, how many were produced, and for what years.
On February 9, 1973, Mr. Phillips executed two acts of sale dividing the Rosedale property in half between his two daughters for a consideration of $15,000.00 each, to be paid over a ten year period based on ten $1,500.00 notes, less five acres situated around the home of Griffin and Myrtle Phillips. The first draft of this sale was drawn up on September 5, 1972 and included a place for Mrs. Phillips to sign. She at that time refused to sign said draft and subsequently left the marital domicile. The sales were executed on February 9, 1973, and were recorded on February 20, 1973. During the interim Mrs. Phillips recorded a declaration of homestead on February 16, 1973 which included the property which was allegedly sold on February 9th. Mrs. Phillips returned home and remained with Mr. Phillips until his death.
On August 7, 1973, Mr. Clifford Redell contacted Mr. Griffin Phillips concerning a listing of the property for sale. Mr. Phillips signed a listing agreement which stated that the property was owned by him, was not rented, and was to be sold for $1,000.00 per acre. Mrs. Phillips refused to sign the listing agreement but stated that she would agree to selling the property if she received half of the cash. According to the appellants they had given permission for their father to list the property in order to maintain harmony in the family. The agreement was withdrawn on August 10, 1973.
On August 29, 1974, Mr. Griffin Phillips died intestate. Immediately following his death discussions ensued concerning the disposal of the cattle and the property. Mrs. Phillips was informed by Mr. Nereaux that he was owner of the cattle and offered her the $15,000.00 which he claims to have been holding for Mr. Phillips.
She refused to accept the amount that he offered and she claimed the ownership of the cattle. It was not until the opening of the succession that Mrs. Phillips claims that she learned of the February 9, 1973 sale of the property to her daughters. From October of 1974 to January of 1975 Mrs. Phillips along with her sons, son-in-law and neighbors maintained the operation of the farm. It is questionable whether Mrs. Phillips ordered Louis Nereaux off of the property or whether he merely stayed away until January 31, 1975 when he was appointed custodian of the herd by the trial court.
The Trial Judge found the status of the property to be community in that the sheriff's sale contained no double declaration. He found that the sale of the 3 acres for the homesite of the Nereauxs was valid under LSA-C.C. art. 2404 which allows the husband to gratuitously donate immovables for the establishment of the children of the marriage. The second sales of the property on February 9, 1973 were held to be simulated sales in that no consideration was paid nor was there any intention to pay. It was found, however, to be a valid donation inter-vivos of the husband's half interest in the property. The widow would receive her half of the community property which would include the area denoted in the Declaration *817 of Homestead. The court held the leases valid from 1967 through 1973, giving title to all of the calf crop to Louis Nereaux except for the years 1974 and 1975. The calf crop estimated for those years was 50 calves per year which was owed to the estate by Mr. Louis Nereaux, Jr. Finally, the court found that the widow had no usufruct over the husband's share of the community property since he did not die possessed of the property; therefore, Irene Phillips Nereaux and Carolyn June Phillips Hayes own half of the property in full ownership.
The appellants assign nine specifications of error to wit:
(1) The Trial Judge erred in holding that the immovable property which forms the subject of this lawsuit was the property of the community of acquets and gains existing between Griffin Phillips and the Plaintiff, Myrtle F. Phillips.
(2) The Trial Judge erred in holding that the Acts of Sale with Mortgage dated February 9, 1973, to Irene Phillips Nereaux and Carolyn June Phillips Hayes were simulated sales.
(3) The Trial Judge erred in ordering the return to Myrtle F. Phillips of a one-half (½) interest in the Northern tract of land sold to Carolyn June Phillips Hayes and a one-half (½) interest in the Southern tract of land sold to Irene Phillips Nereaux.
(4) The Trial Judge erred in ordering the return of the calf crops for the years 1974 and 1975, or the value thereof, to the estate of Griffin Phillips.
(5) The Trial Judge erred in holding that Mrs. Myrtle F. Phillips was entitled to twenty (20) acres which surrounded the actual homesite as a result of the declaration of homestead which she filed.
(6) The Trial Judge erred in holding that the fees of Kermit Williams and J. Gerald Dupont in the amount of $1,875.00 and $1,750.00, respectfully, be taxed as costs of court.
(7) The Trial Judge erred in casting the defendants, jointly, for one-half (½) of the court costs.
(8) The Trial Judge erred in admitting hearsay testimony concerning statements allegedly made by the decedent, Griffin Phillips.
(9) The Trial Judge erred in holding that Griffin Phillips transferred the property to his daughters in fraud of the Plaintiff's rights under Civil Code Article 2404.
The appellee answered the appeal alleging aggrievement from the judgment in that the Trial Judge failed to return all the cattle, all the farm equipment purchased from 1967 to 1974, and all the property to the estate of Griffin Phillips. Finally, appellee protests the assessment condemning her to pay half of the court costs. The aggrievements of the appellee will be encompassed in our discussion of the errors assigned by the appellant.

ERROR NO. 1
The Trial Judge concluded that even though Griffin Phillips had used separate funds to acquire the Rosedale property, such evidence could not be used to rebut the presumption that the property was a part of the community of acquets and gains in the absence of the double declaration in the sheriff's sale.
Appellants argue that this result is not mandated by the Civil Code.
LSA-C.C. art. 2402 generally provides that the "community consists * * * of the estate which they [husband and wife] may acquire during the marriage, * * * by purchase, * * * even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. * * *." This codal article was last amended in 1902.
However, LSA-C.C. art. 2334, since 1912 has in part provided that "separate property is that which either party brings into the marriage, or acquires during marriage with separate funds, or by inheritance, or by donation made to him or her particularly."
The jurisprudence has established that as to immovable property purchased by *818 the husband during marriage, there is an irrebuttable presumption that it is community property unless there is contained in the act of acquisition the double declaration that the property was purchased with funds belonging to him separately, and that it was being acquired for his individual estate. If the purchase was made, however, with separate funds, though absent the double declaration, the community estate is indebted to the separate estate for the amount of the purchase price. Smith v. Smith, 230 La. 509, 89 So.2d 55 (1956); Succession of Hemenway, 228 La. 572, 83 So.2d 377 (1955); Succession of Chapman, 225 La. 641, 73 So.2d 789 (1954); Lewis v. Clay, 221 La. 663, 60 So.2d 78 (1952); Coney v. Coney, 220 La. 473, 56 So.2d 841 (1952); Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478 (1950); Slaton v. King, 214 La. 89, 36 So.2d 648 (1948); Sanderson v. Frost, 198 La. 295, 3 So.2d 626 (1941); Succession of Bell, 194 La. 274, 193 So. 645 (1940); Schoeffner v. Schoeffner, 163 La. 142, 111 So. 655 (1927); Succession of Fay, 161 La. 1022, 109 So. 824 (1926); Peters v. Klein, 161 La. 664, 109 So. 349 (1926); Succession of Watkins, 156 La. 1000, 101 So. 395 (1924); Succession of Goll, 156 La. 910, 101 So. 263 (1924); Rodriguez v. Succession of McFettridge, 156 La. 111, 100 So. 68 (1924); Succession of Andrus, 131 La. 940, 60 So. 623 (1913); McWilliams v. Stair, 128 La. 752, 55 So. 343 (1911); Sharp v. Zeller, 110 La. 61, 34 So. 129 (1902); Succession of Burke, 107 La. 82, 31 So. 391 (1902); Succession of Muller, 106 La. 89, 30 So. 329 (1901); Hall v. Toussaint, 52 La. Ann. 1763, 28 So. 304 (1900); Hero v. Block, 44 La.Ann. 1032, 11 So. 821 (1892); Moore v. Stancel, 36 La.Ann. 819 (1884); Durham v. Williams, 32 La.Ann. 162 (1880); Breaux v. Carmouche, 15 La.Ann. 588 (1860); Joffrion v. Bordelon, 14 La.Ann. 618 (1859); Young v. Young, 5 La.Ann. 611 (1850); Barnett v. Barnett, 339 So.2d 495 (La.App. 2nd Cir. 1976); writ denied, 341 So.2d 1127 (La. 1977); Primeaux v. Libersat, 307 So.2d 740 (La.App. 3rd Cir. 1975), writ granted 310 So.2d 847 (La.1975), reversed on other grounds 322 So.2d 147 (La.1975); Vicknair v. Vicknair, 284 So.2d 836 (La.App. 4th Cir. 1973); Lazaro v. Lazaro, 92 So.2d 402 (La. App. Orl.Cir. 1957); Thomas v. Thomas, 27 So.2d 758 (La.App. Orl.Cir. 1946).
The same however, does not apply to the wife who purchases immovable property during the marriage. She may assert and prove that the purchase was made with separate funds at any time. Southwest Natural Production Co. v. Anderson, 239 La. 490, 118 So.2d 897 (1960); Prince v. Hopson, 230 La. 575, 89 So.2d 128 (1956); Rousseau v. Rousseau, 209 La. 428, 24 So.2d 676 (1946); Succession of Farley, 205 La. 972, 18 So.2d 586 (1944); American Surety Co. of New York v. Noble & Salter, 196 La. 312, 199 So. 131 (1940); Miller v. Miller, 160 La. 936, 107 So. 702 (1926); Kittredge v. Grau, 158 La. 154, 103 So. 723 (1925); Succession of Burke, 107 La. 82, 31 So. 391 (1902).
It is strenuously argued by appellants that prior to Act 170 of 1912 it was only through donation or inheritance that separate property could be acquired during marriage, and that the courts judicially created the additional method of purchase with certain evidentiary requirements. However, since Act 170 of 1912 which amended LSA-C.C. art. 2334 to further allow separate property to be acquired during marriage with separate funds, there was no longer any justification for the double declaration requirement.
It could logically be argued that the Legislature by enacting Act 170 of 1912 overruled the double declaration requirement, but for the legislature's passive approval of the judiciary's continued use of this requirement without any expression to the contrary, though LSA-C.C. art. 2334 has been several times amended. Thus, we conclude the legislature has not overruled the judicially created double declaration requirement.
A more serious attack is made against the jurisprudentially enacted evidentiary rule when appellants contest its constitutionality under Article 1, § 2 and § 3 La.Const. (1974) and the Fourteenth Amendment of the United States Constitution. It is argued that the double declaration *819 rule violates the equal protection provisions of both Article 1, § 3 La.Const. (1974) and the Fourteenth Amendment of the U. S. Constitution because the same standard of proof is not applied alike to both men and women.
Our brethren on the Third Circuit in Primeaux v. Libersat, supra, discussed the constitutional issue and using the reasonable basis approach as expounded in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), concluded there was a reasonable basis and held the double declaration evidentiary rule constitutional.
Writs were applied for and granted in Primeaux, supra, however, the constitutional question was not at issue.
Two bases have been established in the jurisprudence for the use of the double declaration rule. As stated in Primeaux, supra:
"One such basis involves public policy and has been recognized by our courts for almost a century, this being the fact of notice to third parties via recordation in the public records. The function of the double declaration is to place the public on guard and on inquiry as to the actual existing facts. Thus they can presume that anything in the name of the husband, without the declaration, is held for the community. Without requiring such a declaration and thus enabling the husband to freely fix at any subsequent time the tenure by which the property is held, the title to such would be `an uncertain, floating title, neither advisable nor permissible'. [Footnote omitted.] However, if in turn, the property is in the wife's name the public cannot presume that it is community property and must investigate. Sharp v. Zeller, 110 La. 61, 34 So. 129 (1902); Succession of Burke, 107 La. 82, 31 So. 391 (1902); Hero v. Block, 44 La.Ann. 1032, 11 So. 821 (1892); Huie at 26 Tul.L.Rev. 446; Wilcox, Civil Law-Comments-The Marital Status of Property Purchase With Separate Funds, 9 Tul. L.Rev. 107, 115.
"Another reason for the distinction stems from the relative positions of the wife and husband in the administration of the community. Inasmuch as the husband is given extensive powers of control over the community, the wife in turn must have counter-balancing protections. One such protection is the "double declaration' by the husband in order that there is reliable evidence of his intention at the time of the purchase. If the husband did not have to make it clear at the time of purchase that the property acquired was his separately, but could do so at a later date, it might well happen that the husband would leave this declaration to a subsequent time, when the value of the investment was determined. For example: If the property diminished in value, or a debt on it fell due, the husband could claim it was community property and therefore the community would be liable. He could further materially injure the wife's rights in the community assets if the property increased in value. Sharp v. Zeller, supra; Metcalf v. Clark, 8 La.Ann. 286 (1853); Bass v. Larche, 7 La.Ann. 104 (1852); dissent in Hollier v. Fontenot, supra; Huie at 26 Tul.L.Rev. 446; Wilcox at 9 Tul.L.Rev. 116."
We are of the considered opinion that a closer examination of each basis will prove that there is no true rational justification.
NOTICE TO THIRD PARTIES VIA RECORDATION IN THE PUBLIC RECORDS. The husband can lease, mortgage or sell community property without the wife's authority or consent unless it stands in the name of both the husband and wife or it is declared to be the family home. LSA-C.C. art. 2334. As far as the public is concerned, it is not whether it is separate or community property, but rather which spouse is authorized to alienate the property. We can reason not how the double declaration rule aids in determining who shall sign. The absence of the double declaration conclusively presumes it to be community property, however, the reverse is not true. The mere insertion of the double declaration does not benefit the husband with a conclusive presumption that it is separate property. There is a presumption *820 that it is separate, but it is a rebuttable presumption. Regardless whether it be separate or community, the husband can alienate the property except as provided in LSA-C.C. art. 2334.
FLOATING TITLE THEORY. Though this term of art is mentioned in the first basis in Primeaux, supra, it properly belongs to the second. The apparent concern of the Courts is that since the husband as head and master of the community has such extensive administrative powers, the wife is at an extreme disadvantage. Rather than allowing the husband to pick and choose at a later date which of several pieces of immovable property were purchased by him for his separate estate, vis-a-vis the community estate, the rule provides that he should declare his intentions at the time of the purchase. It is argued that this will disallow the husband at a later point in time to pick the better of several investments to be in his separate estate. This argument, however, assumes the double declaration presumes the property separate without any additional proof.
We strongly disagree with this approach. Simply because the husband as head and master of the community acts for the community in making investments does not place him at a distinct advantage over the wife in determining at any particular point in time which prior investment shall fall into his separate estate without sufficient proof that separate funds were used for the purchase. If the husband cannot show by a preponderance of the evidence that his separate funds were used to purchase a particular piece of immovable property, then he loses, and the property falls into the community. To deny him the opportunity to offer this proof is to deprive him of the same opportunity given the wife.
It seems to this Court that there is a fear that doing away with the double declaration doctrine will cause problems. Courts will be called upon to determine whether the husband has offered sufficient proof, but those same courts are called upon to determine whether the wife has offered sufficient proof to show that property purchased by her without any declaration at all is separate property. This has caused no problems for the courts.
Other than merely saying that the husband's administrative control over the community is a rational basis, there is no reasonable rational basis. We conclude, therefore, that the application of such a rule denies to the husband the equal protection of the laws guaranteed to him by both the Louisiana and the United States Constitutions.
As far as this Court can determine, the constitutional validity of the double declaration rule has only been presented to the Louisiana Supreme Court in the case of Barnett v. Barnett, supra, wherein by refusing writs, the Supreme Court affirmed the constitutional validity.
In the absence of Barnett v. Barnett, supra, and irrespective of the long line of jurisprudence upholding the double declaration rule, we would declare such a rule unconstitutional however, as an intermediate appellate court, we are mandated to follow the decisions of our Supreme Court. As we said in O'Connor v. Terry, 346 So.2d 739 (La.App. 1st Cir. 1977):
"Where the jurisprudence is clear and unmistakable, this court has no authority to change the policy thereby established. In such instances, it is the duty of intermediate appellate courts to follow the law as established by the decisions of the Supreme Court. * * * Assuming, arguendo, we disagreed with the jurisprudence in this regard, we are compelled to follow what is obviously a clear expression of our Supreme Court. Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So.2d 502 (1969)."
The Supreme Court in Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970) lectured the intermediate appellate courts and said that a departure from settled jurisprudence should not be undertaken by an intermediate court, that it must recognize its obligation to follow the settled law of this state, and that in the absence of statute, the law is what the Supreme Court says it is.
*821 Thus, it is not within this Court's power to overrule our Supreme Court, and we, therefore, must reluctantly hold the property purchased by the deceased falls within the community regime existing at the time of the purchase.

ERRORS NO. 2, 3 & 9
The Trial Judge in his written reasons for judgment concluded that the February 9th sales of property to be simulated sales, there being no consideration paid nor any intention of transferring title from Mr. Phillips to his daughters. In order to determine whether a sale is simulated or not, the court must determine whether the parties acted in good faith, whether there was an actual intention to transfer title, and whether any consideration was given for said transfers.
If any consideration is given no matter how small, there is under the jurisprudence and law of Louisiana, a confirmation of the reality of the sale. Russell v. Culpepper, 344 So.2d 1372 (La.1977); Bagala v. Bagala, 237 La. 60, 110 So.2d 526 (1959); Pilcher v. Gillen, 314 So.2d 741 (La.App. 1st Cir. 1975), writ refused, 320 So.2d 202 (La.1975). In Russell v. Culpepper, supra, the Supreme Court said:
"A transaction will not be set aside as a simulation if any consideration supports the transaction, because the reality of the conveyance is thus established."
The record reveals that there was a true intention on the part of Mr. Phillips to vest title to his property in his only heirs, Irene and Carolyn June. He had been attempting to transfer title since September of 1972. The sales on February 9, 1973 also include the requisite delivery of consideration. There were notes executed by each of the vendees at the time of the sales and none had been cancelled by the vendor prior to his death.
A sale where consideration is given by the execution of valid promissory notes is sufficient to meet the requirement for payment of consideration. Freeman v. Woods, 1 So.2d 134 (La.App. 2nd Cir. 1941). The record establishes that no payments were made on the notes prior to Mr. Phillips' death; however, the notes are still valid and the defendants have not been relieved of their obligation to make the payments. The obligations owed to the deceased are collectible by the administratrix of the succession. LSA-C.C.P. art. 3211.
Based on the facts that the notes were issued and are collectible by the succession representative, we find the Trial Court erred in holding the sales to be simulated; the intention of the parties being to transfer title and valuable consideration being given.
Since we find the sales to be true or valid sales rather than simulations, it logically follows that they would not be donations in disguise as found by the Trial Judge.
This Court having concluded the sales to be valid, can find no authority to return to the wife one-half of the actual property sold. The Supreme Court in the case of Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956) held:
"The law does not give to a wife, who has sustained injury by a conveyance of community property in fraud of her rights, a right of action for rescission of the transactionsuch as the revocatory action available to creditors for the purpose of setting aside the fraudulent conveyance of their debtors."
The record reveals that the disposal of the wife's share of the community for a minimal consideration and the intentional concealment of those sales by Mr. Phillips, i. e. the listing agreement, is a fraud of Mrs. Phillips' rights. A fraud of the wife's rights under paragraph 4 of article 2404 does not make the sale simulated but gives the wife an action against the husband or his heirs for the loss sustained from said sales. This Court in Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir. 1968) relying on Thigpen, supra, said that "a husband who has sold or disposed of community property by fraud, to injure his wife, is liable to the wife for one-half of the value of the property disposed of."
*822 Appellee introduced two real estate experts who placed the value of the property at the time of the sale to be from $599.00 up to $700.00 per acre. This Court finds the value of the property at the time of the sale to be $650.00 per acre.
We hold that the defendants, Irene and Carolyn June, possess valid title to that property transferred to them on February 9, 1973, less any reduction in the amount of the property transferred that may be covered by the declaration of homestead. They are however, as heirs of Griffin Phillips, liable to Myrtle Phillips for the value of her half of the community property sold in fraud of her rights. On remand, the Trial Judge shall determine the amount of this liability after disposing of the issue as to the amount of land covered by the declaration of homestead, should that amount exceed 5 acres.[1]

ERROR NO. 4
Appellee contends that the Trial Judge erred in concluding that there were valid leases from 1967 to 1974 inclusive. From 1967 through 1972 the record contains the written and recorded leases which required Louis Nereaux, Jr. to pay rent and perform other services. We hold these leases to have been validly executed and complied with.
As to the period from 1973 to 1974 the Trial Court held "the cattle lease was reconducted tacitly in 1973." The record confirms this ruling and thus, we find no error. LSA-C.C. art. 2688.
The Trial Judge in his written reasons for judgment found that:
"In 1974, Mr. Nereaux made arrangements to purchase the seventy (70) head of cattle from Griffin Phillips, the decedent, for Fifteen Thousand ($15,000.00) Dollars cash. The money was borrowed from the bank and turned over to Mr. Phillips, who endorsed the check and actually consummated the sale by his actions."
Louisiana Civil Code Article 2456 provides that:
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
From the facts presented, we find Louis Nereaux, Jr. to have been the lawful owner of the cattle from January 30, 1974 until the date of retrocession of the sale, December 2, 1975. The effect of the rescission of a sale is to abrogate the contract placing the parties in the same status quo as prior to the aborted sale. In the case of Nugent v. Stanley, 336 So.2d 1058 (La.App. 3rd Cir. 1976) our brethren on the Third Circuit concluded that:
"A sale which has been rescinded, voluntarily or otherwise, ceases to exist . . . When a sale is rescinded the parties are returned as nearly as possible to the situation as it existed prior to the sale."
The Act of Retrocession executed by Louis Nereaux returning the 70 head of cattle to the estate of Griffin Phillips must also include the calves produced by those cattle. LSA-C.C. art. 500.
Since Mr. Nereaux subsequently purchased the herd of cattle from the estate of Griffin Phillips in October of 1976, this Court finds that the succession of Griffin Phillips is entitled to those calves or their equivalent value, produced during 1974 and 1975, that being 50 calves per year as calculated by the Trial Judge on a yearly production basis.
Appellee argues that the calves have produced calves which belong to the estate; however, we find in the record that the 1976 sale of the cattle included the yearlings and thus any calves produced belonged to their owner at that time, Mr. Louis Nereaux, Jr. We concur with the Trial Judge's findings as to the calf crop produced.

ERROR NO. 5
Appellants argue that the declaration of homestead executed by the appellee *823 is invalid since at the time the declaration was filed she was not living with her husband. We disagree. In the case of Azar v. Azar, 185 So.2d 113 (La.App. 4th Cir. 1966) the Court found that the wife's declaration of homestead filed one day prior to the judicially determined date of separation was effective even though she had not been physically living in the home on the date of the declaration. The Court stated that:
"The state of living together as man and wife is largely a matter of intention and not wholly determined on constant physical presence of the parties together in the same house."
In the facts of this case it is even clearer that the intentions and actions of Mrs. Phillips were such that she had no intention of not continuing to live with Mr. Phillips on the date she filed the declaration since she returned to the home and continued to live there.
As concerns the public records, the wife is considered as a third party being encumbered by prior recorded documents. Watson v. Bethany, 209 La. 989, 26 So.2d 12 (1946). Being equated to a third party, the wife's declaration of homestead takes effect as to subsequent recorded documents from the date of its recordation. It is therefore clear that the recordation of the sales, recorded on February 20, 1973, are burdened by the prior recorded declaration of homestead.
Under LSA-R.S. 9:2802 the wife has a right to prevent the sale of the family home by making a declaration of homestead, but this declaration is limited to 20 acres in the rural area and one lot or lots in urban areas.
The record reveals, and appellee admits that the Phillips' home lies in an incorporated area, however, the record fails to reveal whether it is located on a subdivided lot or lots, or whether it is located on acreage. It is our opinion that if it is located on a lot or lots, then the declaration of homestead is limited to the lot or lots. However, if it is located on acreage, then the declaration of homestead is limited to that acreage within the incorporated area of Rosedale, not to exceed 20 acres. Therefore, since sufficient evidence does not exist in the record, this matter must be remanded for the introduction of additional evidence so as to allow the Trial Judge to make a determination of how much property is burdened by the declaration of homestead.

ERROR NO. 6
Absent a clear showing of abuse of discretion the assessment of expert fees by the Trial Judge will not be disturbed by this Court. Blaise Parking and Enterprise Corp. v. Project Square 221, 349 So.2d 387 (La.App. 4th Cir. 1977). The appellant has failed to demonstrate any abuse by the Trial Judge; therefore, we find no error in the Trial Court's assessment of expert fees.

ERROR NO. 7
Also within the discretion of the Trial Judge is the assessing of court costs and this Court will not interfere with that discretionary determination unless the appellant or appellee demonstrates abuse of the assessment. Town of Kinder v. Beauregard Electric Co-operative, Inc., 339 So.2d 891 (La.App. 3rd Cir. 1976). Neither party has shown any abuse of discretion and thus, we find no error.

ERROR NO. 8
The courts of Louisiana have held that testimony respecting declarations of persons since deceased is the weakest sort of evidence, but that their statements are admissible as evidence. Larocca v. Ofrias, 231 La. 292, 91 So.2d 351 (1956); Abunza v. Oliver, 230 La. 445, 88 So.2d 815 (1956); Pacholik v. Gray, 187 So.2d 480 (La.App. 3rd Cir. 1966). The Trial Judge in admitting the statements made by the deceased to the witnesses stated "that evidence will be given the weakest possible value by this Court." (Tr.-612). We can find no error in the Trial Judge allowing statements made by the deceased into evidence.
Therefore, for the above and foregoing reasons, IT IS ORDERED ADJUDGED and *824 DECREED that the judgment of the Trial Court be and it is hereby reversed insofar as it declared the sales from Griffin Phillips on February 9, 1973 to be simulations, and ordering a return of one-half of the property sold therein to his widow; IT IS FURTHER ORDERED ADJUDGED and DECREED that the claim of Myrtle Phillips, widow of Griffin Phillips, against his heirs is hereby recognized, and the Trial Judge is directed on remand to compute and award said claim in accordance with the views expressed hereinabove; IT IS FURTHER ORDERED ADJUDGED and DECREED that this matter be remanded for the purpose of determining the amount of land subject to the declaration of homestead in accordance with the views expressed hereinabove; and IT IS FURTHER ORDERED ADJUDGED and DECREED that in all other respects the judgment of the Trial Court be and the same is hereby affirmed with cost of this appeal assessed against defendants-appellants, jointly, for one-half and against plaintiff-appellee for one-half.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
NOTES
[1] Five acres were reserved as a homesite in the February 9, 1973 sales.